## Mutual Benefit Life Insurance Company v. First National Bank, etc.

(Decided October 28, 1914.)

### Appeal from Hart Circuit Court.

1. Bills and Notes—Novation—Addition of New Name as Security to Renewal of a Note—When Not a Novation.—The addition, as surety, of a new name to the renewal of a promissory note, does not constitute a novation or discharge of the original note, or release the collateral pledged for the payment of the debt when the original note was executed; unless it is made to appear that such was the intention and understanding of the parties.

2. Bills and Notes—Novation—How Effected.—A novation is a contract, and like other valid contracts must be supported by a consideration, which is the discharge of the original debt. If, therefore, the agreement does not, or was not intended to release the debtor from the old debt, it is not a novation.

3. Bills and Notes—Surety—Married Woman Not Liable As.—Where the additional name signed to the renewal as surety was that of a married woman, she did not become liable thereon, and this was true whether her name appeared to the note as the first or last signer thereof. While, ordinarily, it will be presumed that the name appearing first on a note as an obligor is that of the principal debtor, this presumption may be overthrown by the facts of the case or the conduct of the parties themselves; and it is admissible for one whose name appears first, or above that

of another, on a note, to prove that his or her relation to the obligation is, nevertheless, that of a surety, and this he or she may do by parol testimony.

4.   Bills and Notes—Name of Obligor—When Signed by Another Without Authority—No Liability Imposed Upon Obligor.—Where the name of an obligor in a note, whether a principal or surety, is signed to a renewal thereof without authority from such obligor and without notice to the obligee of such want of authority, the latter can, nevertheless, recover on the original obligation as against both principal and surety.

5.   Insurance—Assignment of Policy as Security For Debt—When Its Cash Surrender Value May Be Recovered by a Creditor.—Where a note is secured by the assignment to the payee, by the obligor and his wife, of an insurance policy on the life of the former having a cash surrender value, the insurance company issuing such policy cannot, when sued with the obligor by the payee, resist the recovery by the latter of the cash surrender value of the policy, unless such assignment of the policy is forbidden by a provision of the policy, or, by its terms, the privilege of surrendering the policy and receiving its cash surrender value, is confined to the insured alone.

6.   Insurance—Assignment of Life Insurance Policy by Husband and Wife for Payment of Note of the Former—Continues as to Renewals Thereof.—Where the wife unites with the husband in the assignment of a policy of insurance upon his life to secure his debt, the assignment remains in force as to renewals of the same debt.

7.   Jurisdiction—Action by Creditor Against Debtor and Insurance Company—How Process May Be Served.—In an action brought by the holder of a note secured by a policy of insurance on the life of the obligor, a non-resident, to subject the cash surrender value of the policy to the payment of the note, if summons be served upon the insurance company through the State Commissioner of Insurance and the obligor constructively summoned by a warning order, the court in which the action is brought will have jurisdiction to render a judgment subjecting, in the hands of the insurance company, such cash surrender value of the policy to the payment of the note.

RICHARDS & HARRIS, WATKINS & CARDEN and DAVID KAY, JR., for appellant.

McCANDLESS & LARIMORE for appellees.

Opinion of the Court by Judge Settle—Affirming.

In April, 1905, Dr. T. H. Garvin, of Horse Cave, this State, and his son, Ed L. Garvin, then a resident of St. Louis, Missouri, or Estonia, New Mexico, borrowed of the appellee, First National Bank of Horse Cave, Ken-

tucky, $1,000.00, for which they executed their joint note, payable one year after date. There were, at the time of the execution of the note, assigned and delivered to the bank to secure its payment, two policies of insurance of $1,000.00 each on the life of Ed L. Garvin, one of these being in the Northwestern Mutual Life Insurance Company and the other in the Mutual Benefit Life Insurance Company of Newark, New Jersey. The latter policy was payable "to Mrs. Bettie Garvin (wife of Ed L. Garvin) if she survived her husband, otherwise to said insured (Ed L. Garvin)." When delivered to the bank this policy contained the following assignment:

"We hereby assign the within policy No. 250654 to First National Bank of Horse Cave, Kentucky, to secure a loan of $1,000.00, the receipt of which is hereby acknowledged.

(Signed)

"Ed L. Garvin,
Bettie H. Garvin."

While there was some contention as to whether the makers of this note were both principals or Ed L. Garvin was the principal and T. H. Garvin the surety therein, our examination of the evidence convinces us that Ed L. Garvin was the principal and T. H. Garvin his surety; and it is fairly apparent from the evidence that the entire $1,000.00 for which the note was executed was received and used by Ed L. Garvin. When this note matured in 1906 it was renewed by the execution of a new note by the same parties and with the same collateral attached as security. Some time after the renewal of the note Dr. T. H. Garvin, at the request of Ed L. Garvin, induced the bank to surrender the policy in the Northwestern Life Insurance Company, which Ed L. Garvin used in borrowing money elsewhere, but there was placed with the bank as collateral security, in lieu thereof, seven shares of the bank's stock, belonging to Dr. T. H. Garvin individually. Although the second note or renewal executed in 1906 became due in April, 1907, it was not paid by the makers or either of them at maturity, or thereafter, and was held by the bank until October 1, 1908, at which time it threatened suit upon the note, to prevent which Mrs. T. H. or Sallie Garvin, wife of Dr. T. H. Garvin, at the instance of the bank, executed to it, in renewal or discharge thereof, her note for a like amount, due one year after date, to which she signed the name of her son, Ed L. Garvin. The

note thus executed by Mrs. Garvin was subsequently, within two or three days, also signed by her husband, Dr. T. H. Garvin. At the time Mrs. Garvin executed the note in question to the bank the insurance policy on the life of her son, Ed L. Garvin, in the Mutual Benefit Life Insurance Company, and the seven shares of bank stock, which had been held by the bank as collateral security for the old note, were by her left with the bank and were retained by the bank as security for the payment of the note.

After the execution of the last-mentioned note by Mrs. T. H. Garvin, and perhaps before its maturity, Dr. T. H. Garvin died testate. His will appointed his widow executrix and devised to her his entire estate. Although the widow qualified as executrix of the will she subsequently resigned as such, and Samuel Heatherly was appointed and duly qualified as administrator with the will annexed of the estate of T. H. Garvin, deceased. Before her resignation as executrix, however, Mrs. Garvin brought suit in the Hart Circuit Court for the settlement of the testator's estate, and about the same time the First National Bank also brought suit on the note in question, proceeding on the theory that Mrs. T. H. Garvin was interested in certain enterprises in which her son, Ed. L. Garvin, was engaged and in which the $1,000.00 originally borrowed by him and his father of the bank was used. It therefore sought to recover of Mrs. Garvin personally, and as executrix of her husband's will, the amount due on the note and also to subject the collateral, held by it as security for the note, to its payment.

After the resignation of Mrs. Garvin as executrix, the prosecution of the suit brought by her for the settlement of the estate was proceeded with by Heatherly, administrator with the will annexed. In the meantime yet another suit was brought by the bank against the personal representative of T. H. Garvin and Mrs. Garvin upon other obligations claimed to be owing by them to the bank, and the three actions mentioned were consolidated and heard together. We are only concerned, however, with the action on the $1,000.00 note. Before the order of consolidation was entered the bank, by an amended petition in that action, made the Mutual Benefit Life Insurance Company, Ed L. Garvin and Bettie H. Garvin, his wife, parties defendant, following which a warning order was properly taken as to Garvin and

wife and an attorney appointed to make defense for them, whose report, showing proper performance of the duty imposed upon him by the warning order, appears in the record. It was alleged in this amended petition that at the time the bank's action was instituted the cash surrender value of the policy on the life of Ed L. Garvin in the Mutual Benefit Life Insurance Company was $311.42, which amount the bank, by reason of the pledge and assignment to it of the policy as security for the note of $1,000.00, was entitled to collect and apply to its payment; and this the prayer of the amended petition asked to be done.

Neither Ed L. Garvin nor his wife filed an answer to the petition of the bank as thus amended, but the Mutual Benefit Life Insurance Company filed a special demurrer thereto upon the ground that the court below was without jurisdiction to adjudicate the question of its liability upon the policy on the life of Ed L. Garvin. The demurrer was overruled and the insurance company, without waiving the question of jurisdiction, then filed an answer, setting up the following grounds of defense: (1) That the original note to secure which the policy was pledged was discharged by the bank's acceptance of the note of Mrs. and Dr. T. H. Garvin; (2) That the financial interest of Mrs. Bettie H. Garvin, wife of Ed L. Garvin, in the life insurance policy was not legally divested and her assignment thereof was not binding upon her; (3) That, even if the assignment was valid, it bound Bettie H. Garvin only to the extent of the satisfaction of the original note, for which it was pledged; and that the assignment of the policy made by her at the time of the execution of that note was, *ipso facto*, released by the acceptance by the bank of the renewal note executed by Mrs. and Dr. T. H. Garvin; (4) That in life insurance the cash surrender privilege was personal to the insured and did not pass to the assignee of the policy; (5) That the Hart Circuit Court had no jurisdiction of the subject matter or of the persons to this litigation.

On the hearing the circuit court reached the conclusion that, according to the terms of the written assignment, the policy in question was pledged to secure the payment of the loan of $1,000.00 evidenced by the several notes executed therefor, that is, the original note and the subsequent renewals thereof evidencing the original indebtedness; that the debt sued on was that

of Ed L. Garvin and that the note executed by Mrs. T.
H. Garvin and her husband to which the former signed
the name of Ed L. Garvin was but a renewal and not a
novation of the original note; that she was only a
surety in the last note, which, in view of her coverture,
created no liability on her part; and further that as
the cash surrender value of the policy in the Mutual
Benefit Life Insurance Company on the life of Ed L.
Garvin was $311.42, the bank was entitled to judgment
against the insurance company for the amount thereof.
Judgment was rendered in conformity to these con-
clusions and from that judgment the Mutual Benefit Life
Insurance Company prosecutes this appeal.

It should here be remarked that the policy of $1,000.00
on the life of Ed L. Garvin was issued by the appellant,
Mutual Benefit Life Insurance Company, on the con-
vertible ten premium life plan. That is, it called for the
payment of ten annual premiums of $44.05, which were
paid as they fell due. At the time the policy was issued
the insured was twenty-seven years of age and when it
was pledged to the appellee, First National Bank of
Horse Cave, as security for the note of $1,000.00 re-
ferred to, the premiums thereon for the entire ten years
had been fully paid. In addition, the regular dividends to
which the policy holder was entitled were applied by the
insured to the purchase of additional participating in-
surance, payable with the policy, which additional in-
surance amounted on April 18, 1912, to $197.00, making
the total insurance due under the contract $1,197.00. On
March 5, 1901, the company made a cash loan of $100.00
to the insured on the policy. This loan was increased on
November 19, 1903, to $150.05, for the purpose of pay-
ing the premium for that year and interest due on the
loan to that date. It appears that the interest on this
loan due annually on November 19th, the policy anni-
versary, was paid in cash until November 19, 1908, and
on that date the interest due was added to the loan, in-
creasing it to $159.05. On each subsequent anniversary
the interest due on the policy loan was settled by an
increase of the loan, and in 1910 a special dividend
amounting to sixty-one cents was applied in part settle-
ment of the interest due November 19, 1910. So on
April 18, 1912, the policy was subject to a loan of $188.79,
with interest from November 19, 1911, and the cash sur-
render value at that date amounted to $311.42 in excess
of the then existing policy indebtedness.

The question of jurisdiction raised by the appellant will first be disposed of. It appears from the record that after the filing of the amended petition by which the appellant insurance company was made a party to the action on the $1,000.00 note, a summons was duly issued against it, which was served by delivering a copy thereof to the State Commissioner of Insurance for and in its behalf, as allowed by Section 631, Kentucky Statutes. That section provides:

"Before authority is granted to any foreign insurance company to do business in this State, it must file with the Commissioner a resolution adopted by its board of directors, consenting that service of process upon any agent of such company in this State, or upon the Commissioner of Insurance of this State, in any action brought or pending in this State, shall be a valid service upon said company; and if process is served upon the Commissioner it shall be his duty to at once send it by mail, addressed to the company at its principal office; and if any company shall, without the consent of the other party to any suit or proceeding brought by or against it in any court of this State, remove said suit or proceeding to any Federal Court, or shall institute any suit or proceeding against any citizen of this State in any Federal Court, it shall be the duty of the Commissioner to forthwith revoke all authority to such company and its agents to do business in this State, and to publish such revocation in some newspaper of general circulation published in the State."

It is manifest from the language of this section that process (i. e. summons) in an action brought in this State against a foreign insurance company, like the appellant, may be served upon any agent of such company in this State or upon the Commissioner of Insurance of this State. Its meaning is not that the process must be served on the agent if there be one in the State, and that it cannot be served on the Commissioner of Insurance if the company has an agent in this State; but that service upon either may be had at the election of the plaintiff in the action. Indeed, the section compels the consent of the foreign insurance company to the service of process upon either as a condition precedent to its right to do business in this State, requiring that such consent be given by resolution of its board of directors, filed with the Commissioner. In Aetna Insurance Co., etc. v. Commonwealth, 106 Ky., 864, we held that a

summons upon indictment against an insurance company may properly be served upon the Insurance Company by virtue of Section 631, Kentucky Statutes. In thus applying the statute we in the opinion said:

"By the statute (Kentucky Statutes, Section 631) foreign insurance companies are required to file with the Commissioner a resolution 'consenting that service of process upon any agent of such company in this State, or upon the Commissioner of Insurance of this State, in any action brought or pending in this State, shall be a valid service upon said company.' Section 11 of the Criminal Code provides: 'A public offense, of which the only punishment is a fine, may be prosecuted by a penal action in the name of the Commonwealth of Kentucky. * * *,'

"The proceedings in penal actions are regulated by the Code of Practice in civil actions. Section 9 provides: 'All public offenses may be prosecuted by indictment, except offenses of public officers,' etc. Chapter 3 of the Criminal Code, on the subjct of 'Process upon Indictments,' provides, in Section 147: 'The summons shall be issued and served in the same manner as a summons in civil actions.'

"It is urged that as the consent goes no further than to make the service upon the Commissioner sufficient in an action, civil or penal, it cannot be extended to an indictment, because the action is within the consent given by the company, and the indictment is not. But we think these statutes, though they might have been better expressed for the purpose, were intended to apply to exactly this class of cases, and to make valid service upon the Commissioner of summons on a misdemeanor indictment, and give jurisdiction of such prosecutions to the Franklin Circuit Court."

The objection that the constructive service obtained on Ed L. Garvin and Bettie Garvin, his wife, by warning order was not sufficient to give the court jurisdiction to render the judgment appealed from, cannot be sustained. A personal judgment was not rendered or sought against Ed L. Garvin or Bettie Garvin. The bank was, as to them, merely seeking to enforce its lien upon the policy of insurance issued by the appellant insurance company upon the life of Ed L. Garvin, which policy was in the bank's possession. Therefore, as to the policy and enforcement of the lien thereon, the proceeding was an action *in rem*. While it is unquestion-

ably true that a judgment in *personam* against a non-resident defendant, not served with process in the jurisdiction of the court, is void, it is equally true that a judgment *in rem* as to a non-resident defendant, though only before the court on constructive service, is not only good against him but as against all other persons claiming through him an interest in or title to the property proceeded against, having notice of the procedings; and this is true, whether the proceeding be by attachment against the thing or property sought to be subjected to the plaintiff's debt, or the thing or property sought to be subjected is in the possession of the plaintiff by a pledge or assignment as security for his debt. Ely v. Hartford Life Ins. Co., 128 Ky., 799; Williams v. Preston, 3. J. J. Mar., 600; Whiting v. Johnson, 5 Dana, 391. It follows from what has been said that, in our opinion, the refusal of the circuit court to sustain appellant's demurrer to its jurisdiction was not error.

We see no reason for sustaining appellant's contention that the debt for which the original note was given, to secure which the policy in suit was pledged, was discharged or paid by the note executed to the bank by T. H. and Sallie E. Garvin. It is true the latter's name did not appear on the old note or the first renewal thereof, but the weight of the evidence is to the effect that she signed the last note as surety for her son, Ed L. Garvin, and her husband, T. H. Garvin, the first of whom was the principal in the original note. It is true that the cashier of the bank testified that at the time of the execution of the last note he supposed Mrs. Sallie Garvin to be the moneyed head of the Garvin family; and, perhaps, that he thought her interested in some enterprise in the West for which the money borrowed upon the original note was used; but we think it apparent from the evidence that neither of these suppositions of the cashier was well founded; and it is evident that it was not the intention of the bank nor that of Mrs. Sallie Garvin that either T. H. or Ed L. Garvin should be discharged from liability for the debt held by the bank, for Mrs. Sallie Garvin, at the time of signing her name to the note, also signed that of Ed L. Garvin thereto, and a day or two thereafter T. H. Garvin also added his name to the note.

It is also manifest that the bank did not, at the time of the execution of the last note, intend to release any of the collateral then held by it which had been originally pledged as security for the debt, for this collateral was

retained following the execution of the last note and is mentioned and identified in the note as security for its payment. In having Mrs. Sallie Garvin to sign her name as the first obligor in the note the aim of the cashier of the bank was to create an appearance contrary to the actual transaction and not actually to extinguish the old debt or discharge from liability thereon, either the persons whose names had previously appeared to the note or the collateral which had been pledged by them to the bank for its payment. In Hart v. Bank of Russellville, 127 Ky., 424, it was attempted by the bank to recover of Mrs. Hart, the wife of S. B. Hart, upon certain notes signed by herself and husband, her name appearing first in the obligations; but we held that Mrs. Hart was merely a surety for her husband and, therefore, not liable upon the notes. In the opinion it is said:

"Ordinarily, it will be presumed that the name appearing first on a note as an obligor is that of the principal debtor, but this presumption may be overthrown by the facts of the case, or the conduct of the parties themselves; and, it is admissible, for one whose name appears first or above that of another on a note, to prove that his relation to the obligation is, nevertheless, that of a surety, and this he may do by parol testimony. Lewis v. Harbin, 5 B. Mon., 564; Emmons v. Overton, 18 B. Mon., 648; Bank v. Gaines, 87 Ky., 601; Skinner v. Lynn, 21 R., 185. Section 2127, Kentucky Statutes, 1903, declares that the wife's estate shall not be liable 'upon a contract made after marriage to answer for the debt, default or misdoing of another, her husband included, unless such estate shall have been set apart for the purpose by deed of mortgage or other conveyance. * * *' As said in Crumbaugh v. Postell, 20 R., 1366, in respect to an attempt to hold the wife liable on certain notes which she had signed with her husband and at his request, her name appearing first with the word 'principal' attached, and his under hers with the word 'surety' added: 'In transactions of this kind, the courts must look to the substance, and whatever the parties themselves may designate or name the undertaking of the wife, if in fact it be an attempted assumption by her of the debt of another, she must be held not liable unless she binds herself in the statutory way. Any other course will speedily result in a nullification of the statute.' "

The evidence is conclusive that Mrs. Sallie Garvin was in no way benefited by the execution of either the

last or the original note, and that she was to no extent interested in any business undertaking or enterprise in which the money obtained on the original note by her husband and son was invested or used. In view of these facts, and the further fact, that she was in effect coerced into the execution of the note, to which her name appears, by the insistence and threats of the bank cashier that the debt must be arranged by her in the manner in which it was done, or that suit would immediately be brought against her husband and son; we are convinced that in executing it she intended to become, and did thereby become, only a surety for them; and this being so, the judgment of the circuit court properly exonerated her from liability thereon.

If Mrs. Sallie Garvin was only surety upon the note signed by her, her husband and son were the only persons upon whom it imposed any liability, which made the note but a renewal of the original and second notes, to neither of which did the name of Mrs. Sallie Garvin appear. As said in Russell v. Centers, 153 Ky., 469:

"A novation is a contract, and like other valid contracts must be supported by a consideration, which is the discharge of the original debt. If, therefore, the agreement does not, or was not intended to, effect the release of the debtor from the old debt, it is not a novation. The following statement from 29 Cyc. 1134, comprehensively explains how a novation may be effected: 'Novation may be effected in three ways: (1) By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation; (2) By the substitution of a new debtor in the place of the old one, with intent to release the latter; (3) By the substitution of a new creditor in the place of the old one, with intent to transfer the rights of the latter to the former.' "

Here there was no substitution of a new obligation; there was no substitution of a new debtor in the place of the old one, with intent to release the latter; nor was there a new creditor substituted for the old one. In fact, there was only an attempted addition of a new obligor whose only relation to the obligation was that of a mere surety, which, by reason of her being a married woman, imposed upon her no liability.

If, as contended by appellant, Mrs. Sallie Garvin was without authority to sign the name of Ed L. Garvin to the note in question, and he was not bound thereby;

that did not make her the principal in the note signed by her, but left Ed L. and T. H. Garvin liable on the former note. Although in giving his deposition, Ed L. Garvin testified that he had not authorized his mother, Mrs. Sallie Garvin, to sign his name to the note, and she did not claim to have had express authority to do so, she had acted in some other business matters for him with his authority and, therefore, signed his name in this instance, believing she possessed the authority to do so. But, however this may be, we are unable to see how the want of authority in her to sign the name of Ed L. Garvin to the note could change her relation to the note from that of surety to a principal. If he was not bound on the present note because of her want of authority to sign his name thereto, and she was not bound thereon because of her suretyship, then the note given by the bank in exchange for the last note was surrendered without any consideration; and instead of being extinguished, remained alive and in full force. So if Ed L. Garvin, upon being sued on the note to which his name was signed by his mother, had interposed a plea of *non est factum*, he would still be liable on the original note or first renewal. It is well settled in this jurisdiction that where the name of an obligor, whether a principal or surety, is forged to a renewal without notice to the obligee, the latter can nevertheless recover on the original obligation as against both principal and surety. First National Bank of Covington v. Gaines, 87 Ky., 597; Stratton v. McMakin, 84 Ky., 643; Carter v. Bank of Columbia, 12 Ky. L. R., 698. No defense was made by Ed L. Garvin or his wife in this action, so we infer that he was unwilling to rely upon the plea of *non est factum*.

It is further insisted for appellant that the beneficial interest of Mrs. Bettie Garvin, wife of Ed L. Garvin, in the life insurance policy in suit was not legally divested and her assignment thereof was not binding upon her. This contention rests upon the theory that the assignment made of the policy by Bettie Garvin, in connection with her husband, was made only for the purpose of securing the payment of the original note, which, it is claimed, was extinguished and the assignment *ipso facto* released, by the bank's acceptance of the renewal signed by Mrs. Sallie and T. H. Garvin. It is manifest that this contention is untenable, unless the acceptance by the bank of the note signed by Sallie and T. H. Garvin, and to which the former signed the name of Ed. L.

Garvin, operated to extinguish the original note or debt, and this, as we have already decided, was not done.

It is patent from the language of the assignment made of the policy by Ed L. and Bettie Garvin that it was for the purpose of pledging whatever interest either or both of them had in the policy as security for the payment of the note originally executed by Ed L. and T. H. Garvin, as well as any subsequent renewal that might be made thereof, and it being clear that the last note, to which the name of Mrs. Sallie Garvin appeared for the first time, was but a second renewal of the original note and so intended by all the parties to the transaction, and that it did not extinguish the debt for which the original note and first renewal were executed, the assignment made of the policy by Ed L. and Bettie Garvin was and is still binding upon them, as held by the circuit court. In renewing the original note it was unnecessary for the bank to obtain of Ed L. and Bettie Garvin a second assignment of the policy; as long as the original debt remained undischarged the collateral placed as security for its payment, at the time the original note was executed, remained pledged and the lien in force. It seems to be well settled by the weight of authority, that where collateral is assigned or pledged as security for a debt, it continues as security for all renewals of the evidence of the debt until it is paid. This rule is well stated in 22 American and English Encyclopedia of Law (2nd Ed.) 871, as follows:

"Where property is taken in pledge for an existing indebtedness, the renewal of a promissory note, given as evidence of such indebtedness, will not affect the pledgee's interest in the property pledged, in the absence of an agreement to the contrary; but the property pledged will stand as security for such balance of the indebtedness in its new form."

In Wirgman v. Miller, 98 Ky., 620; New York Life Ins. Co. v. Miller, 22 Ky. L. R., 233; and Baker v. Owensboro Bank's Receiver, 140 Ky., 121, such an assignment of a policy as was made in this case was held to be valid, and there is less cause for questioning the validity of the assignment of the policy in this case than existed in those cases, for here the policy is payable "to Mrs. Bettie Garvin, if she survives her husband, otherwise to her husband" (Ed L. Garvin). There are no children named in the policy as contingent beneficiaries, as in those involved in the cases *supra,* and the wife's right is condi-

tional upon her survival of the husband, which right the policy does not forbid her assigning or pledging as security for a debt of her husband.

It is not claimed by appellant that the policy confers upon Bettie L. Garvin the right to demand or receive its cash surrender value, but that, as such right did not inhere in her, the fact that she united with her husband in the assignment of the policy did not aid in passing to the assignee the right to demand or receive such cash surrender value upon its debt. It is unnecessary to pass upon this contention, for, if sustained, it would still leave to be determined appellant's principal and final contention, which is, that the cash surrender privilege provided by the policy was personal to Ed L. Garvin and did not pass to the bank by the assignment in question. This contention is rested wholly upon the cases of Townsend's Assignee v. Townsend, Etc., 127 Ky., 230, and Moser v. Connecticut Mutual Life Insurance Company, 134 Ky., 215, neither of which, in our opinion, sustains it. In each of these cases the life policy was made payable to the insured's wife, or if she was dead, to his children; and each contained a provision that at the end of ten years, or at the end of each five year period thereafter, the company would pay to the *insured* a cash value on surrender of the policy; therefore, it was held in each case that the right to demand and receive the cash surrender value of the policy was personal to the insured and could not be exercised by an assignee of the policy for value. The reasons for the court so holding are presented by the following excerpt from the opinion in the Moser case:

"The policy is verbatim the same as that before us in Townsend v. Townsend, 127 Ky., 230. In that case, Townsend, the insured, had designated himself in the application as the person to whom the surrender value was to be paid, and, after he had paid all the premiums on the policy, made a general assignment for the benefit of his creditors, by which he conveyed to his assignee all his property, including choses in action and other demands. The assignee demanded the surrender value of the policy at the expiration of the next five-year period, and his demand being refused, brought a suit, which was dismissed by the circuit court, and on appeal to this court the judgment was affirmed. There is no distinction between that case and this, except that here there was an assignment of the policy, which on its face pur-

ports to have been made in consideration of $1,200.00, and there, there was an assignment of all the debtor's property, including his choses in action and demands for the payments of his debts. We cannot see that there is any distinction between a specific assignment of the policy and a general assignment which includes it. The opinion in that case is not rested upon any such ground. It rests upon the ground that the power of McInerney to terminate the policy and take its surrender value is a mere power, which he might exercise himself, but which he could not transfer to another; that the beneficiaries in the policy, the wife and children, are entitled to its proceeds, unless the power to terminate it is exercised by the person in whom that power is vested by the policy. In that case the court said: 'Admitting that one may transfer his option so as to vest it in his asseignee, it must at least be confined to his option concerning that which is his alone. If it has, by a tripartite contract, the option to adopt such a course in his judgment as would end the estate of one of the parties, the latter is entitled to have him exercise his own option. A might be willing that B should have the power to terminate the former's estate, whereas he would be altogether unwilling to rest it with C, although selected by B for the purpose. That the beneficiaries in this policy did not exercise their own will in bringing the contract into existence takes nothing from the applicability of the principle that one vested with a power, to be exercised on behalf of or against another party to the instrument creating it, must exercise it in person, and may not delegate it to another.' "

The difference between the Townsend and Moser cases and the instant case can readily be seen and understood. The beneficiaries in the Townsend and Moser cases were the wives and children of the insured, the interests of the latter being contingent upon their surviving the mother. Each of the policies by its provisions excluded the beneficiaries or others from demanding or receiving the cash value of the policy by its surrender, by confining to the insured alone the right to terminate the policy by taking in cash its surrender value, thereby making the surrender privilege one purely personal to the insured, which could not be assigned to or vested in another. Here, however, while the wife of the insured is named in the policy as a beneficiary, her right to the proceeds of the policy is made to depend

upon her surviving the insured, and there is a further provision of the policy which declares that in the event the wife does not survive the insured the policy shall be payable to the estate of the insured. Moreover, the policy does not in words, or by implication, vest in the insured alone the right to terminate the policy and take its surrender value. The policy merely provides for a cash value to be paid by the company on a surrender of the policy fully receipted. This makes the privilege of surrendering the policy for cash one which may be exercised by a creditor who received the policy by assignment from the insured as security for his debt. Obviously, Bettie Garvin, the wife of Ed L. Garvin, had an interest in the amount of insurance that would have been payable on the policy at the death of her husband, if she survived him, but the policy does not confer upon her a right to receive its cash surrender value any more than another to whom it might be assigned by the insured; and by joining with the insured in the assignment of the policy to the latter's creditor as security for a debt owing by the insured, she voluntarily put it in the power of the creditor to obtain its cash value by surrendering the policy for the payment of the debt secured to the appellant, which, when done, would necessarily divest her of the amount she otherwise would have been entitled to receive on the policy at the death of the insured, if she survived him.

It is apparent that the appellant is resisting the claim of the appellee by interposing for the insured and the latter's wife, a defense which they, though constructively summoned in the case, have failed to make to the creditor's action. It is true that the testimony furnished by the deposition of the wife, Bettie Garvin, manifests an unwillingness on her part to be bound by the assignment, but no attempt was made by her or her husband, by answer or otherwise, to attack its validity in this case; and as they, by reason of the character of the action and the constructive service had upon them, will be precluded by the judgment from any future attack upon it, appellant is estopped to complain of the judgment upon any of the grounds it has urged against it.

The judgment is affirmed.