## Fletcher American Company v. Culbertson, et al.

(Decided June 22, 1926.)

### Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1. Novation.—Where maker executes renewal note to indorsee of payee on original note, there is novation, and original debt is extinguished.

2. Bills and Notes.—Where indorsee of payee accepts renewal note from maker, he releases indorser from all liability.

3. Bills and Notes.—Makers after executing successive renewal notes to transferee of original note, cannot plead fraud in obtaining original note.

4. Corporations.—Stockholder induced by fraud to purchase stock, must sue to rescind within reasonable time, and not after corporation becomes insolvent, unless he had insufficient time to investigate.

5. Bills and Notes.—Defense of fraud in obtaining original note cannot avail even between parties when renewal is with knowledge of fraud or with knowledge of facts sufficient to put maker on inquiry.

6. Corporations—That Corporation Went Into Receiver's Hands Put Stockholders on Inquiry, and by Executing Thereafter Renewals of Notes in Payment of Stock They Lost Right to Defense of Fraud.—Where, after dividends ceased, and corporation went into hands of receiver, defendants executed renewals of original note given in payment of stock, they cannot set up defense of fraud; such facts being sufficient to put them on inquiry.

GIFFORD & STEINFELD fo appellant.

HUMPHREY, CRAWFORD & MIDDLETON and M. H. TAYLOR for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

The Midwest Engine Company of Indiana was a manufacturing corporation, with its headquarters and

principal plant at Indianapolis. The Midwest Engine Company of Delaware was a holding company organized for the purpose of taking over the Indiana company, increasing its capital and continuing the manufacturing business under these circumstances: The Indiana company was making automobile accessories, steam turbines and several kinds of pumps; in addition it acquired and began to manufacture a movable power plant, designed chiefly for farm use, called the "Utilitor;" a short advertising campaign for the sale of the Utilitor resulted in orders for about 35,000 of them; the plant was able to turn out only fifty a day. Conceiving that a great profit could be made in the manufacture of Utilitors, which could only be put on the market by increasing its plant, the Delaware corporation was organized by it for this purpose, the scheme being that the Delaware corporation would raise $8,000,000.00 by the sale of its stock and thus take over the plant of the Indiana corporation, which owned sixty-five acres of land at Indianapolis, and also a considerable plant at Anderson, Indiana. R. M. Bowen was one of the agents selling the stock of the Delaware corporation to carry this scheme into effect. He sold to Craig Culbertson and Arthur Middleton one hundred shares of the stock of the Delaware corporation and they executed on October 1, 1920, a note to the Midwest Engine Company for $10,500.00, due four months after date. This note was sent by Bowen to the Fletcher American Company at Indianapolis, a corporation engaged in the business of buying and selling stock, bonds and other securities, and acting as the syndicate manager of the syndicate selling this stock. It investigated the solvency of the makers and after such investigation bought the note from the Midwest Engine Company, which endorsed it to the American Company. That company then paid Bowen his commission and paid the remainder of the price to the Midwest Engine Company. The note was not paid at maturity and thereupon R. M. Bowen, Craig Culbertson and Arthur Middleton executed their note to the Fletcher American Company for $10,500.00, due June 1, 1921. This note was renewed on June 1, by the same parties for the same amount, due October 1, and like renewals were executed every four months until February 2, 1923. This action was brought by the Fletcher American Company v. Craig Culbertson and Arthur Middleton on the note executed February 2, 1923, for $10,500.00, and some part of the interest on the previous renewals which

had not been paid. The defendants by their answer
pleaded that the original note was obtained from them
by fraud and that the renewals were all executed in ig-
norance of the fraud which had been practiced upon
them; that Bowen wilfully misrepresented the condition
of the Midwest Engine Company when he sold them the
stock and that in selling them the stock he was acting as
the agent of the Fletcher American Company. The allega-
tions of the answer were denied by reply; the case was
heard before a jury, who returned a verdict for the de-
fendants. The plaintiff appeals.

The only question we deem it necessary to consider
on the appeal is whether the court should have instructed
the jury peremptorily to find for the plaintiff. The ad-
mitted facts shown by the evidence are these: Bowen was
a friend of Culbertson and Middleton. They were selling
Packard cars and he was talking with them of buying a
car. He described to them the assets and prospects of
the company and finally to induce them to buy the stock
told them that when the note was due if they did not wish
to take the stock he would take it off their hands and pay
the note. On September 30, 1920, or the day before the
note was dated he put the promise in writing in a letter
to them in these words:

> "Referring to your purchase of one hundred
> (100) shares preferred stock and fifty (50) shares
> of common stock of the Midwest Engine Company,
> for which you have given in payment your four
> months' note for $10,500.00, beg to advise that in
> consideration of your assistance to me in getting this
> issue before Louisville investors, I agree to purchase
> from you the stock mentioned above at the price you
> paid for same, namely $10,500.00, not later than
> February 1st, 1921, provided you notify me not later
> than January 15, 1921, that you wish me to take this
> stock off your hands."

Before the note fell due they notified Bowen that
they did not want the stock, and on February 12, 1921,
Craig Culbertson wrote the Indianapolis people a letter
in which, among other things, he said this:

> "Mr. Bowen was to take this stock over, but
> stated to us that the Midwest Engine Company pre-
> ferred renewing the note rather than have the trans-
> fer made, and as Mr. Bowen is really obligated for

the above mentioned stock, we are in the hope that this could be taken care of in the manner as outlined."

Two dividends of $200.00 each on the stock were paid to Middleton and Culbertson and they turned this money over to Bowen and he applied it to pay the interest on the note. Thus things ran along until Middleton and Culbertson refused to pay the last renewal note and this suit followed, they insisting that the American Company should look to Bowen for the money and the company insisting that it knew nothing of any arrangement between them and Bowen. The correspondence between them and the company shows that they had made this claim from time to time before several of the renewals and that the company had always maintained that it had nothing to do with the arrangement between them and Bowen.

The original note having been executed to the Midwest Engine Company and that company having transferred it to the Fletcher American Company, the execution of the renewal to the Fletcher American Company was a novation extinguishing the original debt. "A novation is accomplished also by the substitution of a new party to a contract whereby the rights and liabilities of the old party are extinguished." 20 R. C. L., p. 363.

The holder by such a novation releases the endorser from all liability and the maker of the renewal loses all right to set up against the holder the defense of fraud in the obtention of the original note. In 8 C. J., p. 445, section 659, the rule is thus stated:

"Where commercial paper is usurious or otherwise illegal, or is subject to the defense of fraud or want or failure of consideration, or other defenses, but has come into the hands of a *bona fide* purchaser for value, new paper executed to him in renewal of the same is valid."

The renewal was a payment of the note originally executed for the stock. This court has often applied this rule where the original note was usurious and a renewal had been executed to the assignee. The reason for the rule is thus stated in Stone v. McConnell, 1 Duvall 57:

"The assignee is not contaminated with the usurious contract; he takes the first note for a valuable consideration from his assignor. By taking

a new note from the debtor the security for the debt is changed, his assignor is released from liability to him, and the debtor must resort to his right of action against the usurer to recover the money paid as usurious interest. Such has been the unbroken current of decisions in this state.''

To the same effect see Smith v. Young, 11 Bush 393.

The same rule must apply to the defense of fraud, for the basis of the rule is that there has been a novation and a new debt has been created. In Odbert v. Marquet, 163 Fed. 892, 175 Fed. 44, the precise question we have here was presented, where in defense of a renewal note executed to the bank the defendants pleaded fraud in the obtention of the original note, and it was held that they could not make this defense against the bank after renewing the note several times to the bank. To same effect see Beal v. Bethel, 3 R. 397; Burks v. Cheek, 11 R. 953; Ky. B. & L. Assoc. v. Daugherty, 84 S. W. 1173.

No dividends were paid on the stock after the first two dividends in 1921. The Midwest Engine Company of Delaware and the Midwest Engine Company of Indiana both went into the hands of a receiver in April, 1922. Notwithstanding this and trusting to Bowen, appellees continued to execute the renewal notes to the Fletcher American Company without making any investigation, and now rest their defense upon the ground that they did not discover that a fraud had been practiced upon them until after this suit was filed. Upon precisely this question in Reed v. Owensboro, &c., Trust Co., 141 Ky. 444, this court, after a careful review of the authorities, thus stated the rule:

"In brief, our conclusion is that when a stockholder has been induced by the false or fraudulent representations of the officers of a corporation to purchase its stock he may during the solvency of the corporation, if the action is brought within a reasonable time after the fraud is discovered and before the statute of limitation has barred it, have a rescission of his contract upon equitable terms or recover the loss sustained by the fraud. But if the corporation is insolvent when the action for rescission or other relief is brought, or if proceedings have then been instituted to liquidate its affairs on the ground of insolvency, and the rights of creditors will be affected, the shareholder who has been in-

duced by fraud or misrepresentation to purchase stock cannot obtain relief from his contract unless he became a stockholder so shortly before the insolvency as not to have had reasonable time or opportunity to investigate its affairs and discover the fraud, nor unless upon the discovery he without delay asserts his right to appropriate relief.'' To same effect see Palmer v. Citizens' Bank, 179 Ky. 54; Preston v. Jeffers, 179 Ky. 384.

The rule is well established, even where the renewal is between the same parties, that the defense of fraud in the obtaining of the original note cannot be made when the renewal was executed with knowledge of the fraud or with knowledge of such facts as should have put the maker upon inquiry. National Bank v. Robertson, 203 N. W. 295, and cases cited; 3 R. C. L., p. 1106, section 321.

Appellees were put on notice that something was wrong when the dividends ceased. They were certainly put upon inquiry when the company went into the hands of a receiver, yet without inquiry, after this, they executed three renewals of the note. The Fletcher American Company had in its hands money belonging to the Midwest Engine Company. If complaint had been timely made it might have protected itself, but to allow the defense to prevail now is to make it bear the loss which has been occasioned by the failure of appellees to act promptly, or to make inquiry. Plainly from the record they trusted in Bowen. They must bear the loss rather than the Fletcher American Company.

On the whole case the court should have instructed the jury peremptorily to find for the plaintiff.

Judgment reversed and cause remanded for a new trial.