## Porter v. Bedell et al.

(Decided April 26, 1938.)

KIRK & BARTLETT for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

A. C. Jones, a resident of Ohio county, died in the fall of 1926, the owner of certain land and a small amount of personal property, and was survived by his widow, Sallie Jones, now Sallie Bedell, and two children, Stanley B. Jones and Christa Harris. Some time prior to his death A. C. Jones had executed two notes with Hardin Porter as surety; one to the Bank of Caneyville for $1,500, and the other to the Breckinridge Bank of Cloverport for $1,000. When A. C. Jones died there was a balance of $399.72 due on the Breckinridge Bank of Cloverport note and $1,500 due on the Bank of Caneyville note. On their maturity after the death of A. C. Jones the two notes were renewed by Mrs. Jones and Hardin Porter. On the renewal of the Bank of Caneyville note there also appears the name of S. B. Jones, but it is conceded that he did not sign the note. Porter finally paid the renewal notes, and on November 20, 1934, brought this action under sections 2088 and 2089, Kentucky Statutes, to recover of the heirs of A. C. Jones the amount of indebtedness owing by Jones at the time of his death. The heirs pleaded two defenses: (1) Limitation; (2) payment. The chancellor dismissed the petition and Porter appeals.

When a surety pays his principal's obligation without taking an assignment thereof, his cause of action against his principal is based on an implied obligation to pay and is therefore barred by the five-year statute of limitations. Kentucky Statutes, sec. 2515. Joyce v. Joyce's Adm'r, 1 Bush 474; Robinson v. Jennings, 7 Bush 630. It is conceded that the Breckinridge Bank

of Cloverport note was paid off more than five years before the action was brought, and at the outset that feature of the case may be eliminated. With respect to the Bank of Caneyville note the situation is as follows: In lieu thereof the bank accepted a note signed by appellant, who was surety on the former note, and Mrs. Jones, and purporting to have been signed by S. B. Jones, and turned the old note over to appellees. Appellees insist that the new note operated as a payment of the old note, and immediately upon its execution there arose a right of action in favor of appellant, the surety. It may be conceded that a surety, who satisfies the creditor of his principal by executing in good faith his note, may assert the amount for which he executed the note as a valid demand against his principal, Wilson v. Hite's Ex'r, 154 Ky. 61, 157 S. W. 41, but whether the original note was extinguished depends on whether or not the renewal note constituted a novation. Fletcher American Company v. Culbertson, 215 Ky. 695, 286 S. W. 984. If the facts do not show a novation, the original indebtedness is not extinguished. Armstrong v. Walker, 200 Ala. 364, 76 So. 280; Bohning v. Caldwell, 5 Cir., 1925, 10 F. (2d) 298, certiorari denied in 1926, 271 U. S. 663, 46 S. Ct. 475, 70 L. Ed. 1139. If the renewal note is invalid, it does not operate to discharge the original note. Thus the receipt of a new note, the signature to which is found to be forged, does not operate as a payment of the original note or as an extinguishment of the right of action thereon. The same rule applies where the invalidity of the renewal is due to other reasons, such as want of authority to execute or accept it, disability or incapacity of the party executing or indorsing it, usury or alteration where the holder is an innocent party. 8 Am. Jur. sec. 796; Stratton v. McMakin, 84 Ky. 641, 8 Ky. Law Rep. 766, 4 Am. St. Rep. 215; First National Bank v. Gaines, 87 Ky. 597, 9 S. W. 396, 10 Ky. Law Rep. 451; Bright v. First National Bank, 106 Ky. 702, 51 S. W. 442, 21 Ky. Law Rep. 313; Carter v. Bank of Columbia, 16 S. W. 79, 12 Ky. Law Rep. 968; Corydon Deposit Bank v. McClure, 110 S. W. 856, 33 Ky. Law Rep. 679; Corydon Deposit Bank v. McClure, Ky., 121 S. W. 446; Mutual Benefit Life Insurance Company v. First National Bank, 160 Ky. 538, 169 S. W. 1028. In First National Bank v. Gaines, supra, a creditor holding a note on two or more obligors accepted what purported to be a renewal note signed by all the obligors. It turned out,

however, that the renewal note was invalid as to some of them, and it was held that the obligation on the original note was not extinguished and the obligee might sue and recover. The renewal note in question being invalid on the ground that the name of S. B. Jones was forged, it did not operate to pay the former indebtedness at the time of its execution.

But the point is made that the invalidity of the note as to S. B. Jones may not be relied on to defeat the novation, as his name was dropped in July, 1929, more than five years before the suit was brought. Whether the proposition of law is sound, we need not determine. The only evidence on this phase of the case is the letter from Mrs. Bedell, dated July 5, 1929, addressed to appellant and stating that she had signed the note and was sending it to him, and asking him not to send the note to Stanley to sign "for he can not and I don't want you to ask him to," coupled with the statement of appellant that after that Mrs. Bedell and Stanley quit signing. In our opinion this evidence falls short of showing that in the month of July, 1929, a renewal note with S. B. Jones' name omitted was actually accepted by the bank.

We come then to the defense of payment. According to Stanley Jones, his family made an agreement with appellant immediately after the death of his father in 1926, by which appellant accepted certain livestock, farming implements, etc., in payment of the indebtedness due appellant. With his evidence is an itemized statement showing that the property so turned over to appellant was worth $2,332. In the list are a black mare worth $200, a pair of gray mares worth $450, a pair of mules worth $300, one young mule worth $200, a Holstein heifer worth $125, eight head of cattle worth $550. On the other hand appellant testified that no such agreement was made, but that he actually purchased and paid for the livestock and farming implements that he received off the farm. In November, 1926, he bought nine head of cattle from Mrs. Bedell and gave her a check for them. In the fall of 1927, he bought two gray mares for $200, a sucking mule, and some harness for $55, and paid for them. He did not get the pair of yearling mules at all, but did get some farm implements for which he paid $119, and this was credited on the Breckinridge Bank of Cloverport note. Though at first she denied getting any money for the stock, Mrs. Bedell

finally admitted that she received $200 from appellant for the two mares. She also stated to other witnesses that she had sold the mares and gotten the money for them. The records of the bank also show that appellant gave to her a check for $320, which she received and cashed. Appellant testified that he did not get the pair of yearling mules, but they were purchased by Willie Hall, who corroborates him. It is further shown that after the alleged settlement was made Mrs. Bedell continued to pay interest on the notes. It also appears that after the alleged settlement S. B. Jones stated to Frank Dean that he was not paying his father's debts, and there is no denial of that statement. In our opinion the case is one where the admitted and proven facts are wholly at variance with the alleged settlement. One does not continue to pay interest on an obligation from which she has been released. One does not pay out several hundred dollars for things for which he has already settled. If the indebtedness of A. C. Jones had been settled by the property transfer, the natural thing for S. B. Jones to have said would have been that his father's indebtedness had been settled, and not that he did not intend to pay the indebtedness. We are therefore constrained to the view that the indebtedness was not satisfied by the transfer of any property to appellant, and that appellant to the extent of assets received by appellees is entitled to recover all payments made on the Bank of Caneyville note within five years prior to the institution of the action.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.