**In the Matter of Harold Thomas JONES and wife, Fritza Montgomery Jones, Debtors.**

**Bankruptcy No. B–80–00806C–7.**

United States Bankruptcy Court, M. D. North Carolina.

Aug. 15, 1980.

R. Walton McNairy, McNairy, Clifford & Clendenin, Greensboro, N. C., for debtors.

Thomas W. Ross, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N. C., for SunAmerica Financial Corp.

## MEMORANDUM ORDER

JAMES B. WOLFE, Jr., Bankruptcy Judge.

This matter came on for a hearing and was heard before the undersigned U. S. Bankruptcy Judge on June 19, 1980 upon the application of the Debtors to avoid the lien of SunAmerica Financial Corporation on a garden tractor belonging to the Debtors pursuant to Section 522(f) of the Bankruptcy Code. The determinative issue is whether the lien is based upon a purchase money security interest or non-purchase money security interest. Upon consideration of the record herein, the written Application and Response submitted by counsel, the documents admitted into evidence, the testimony of the Branch Manager of SunAmerica Financial Corporation, and the arguments of the parties, the Court holds the lien is based upon a non-purchase money security interest and orders that the lien be avoided.

The Debtors borrowed money from SunAmerica Financial Corporation on August 12, 1974, for the purpose of purchasing a Gibson garden tractor and mower assembly. The proceeds from the loan were contemporaneously and simultaneously paid directly to the retail seller, and the Debtors executed a Promissory Note to SunAmerica Financial Corporation together with a Security Agreement granting a security interest in the tractor and mower assembly. The security agreement secured any future advances by the lender in addition to the purchase price of the tractor and mower assembly. SunAmerica promptly filed a financing statement. The purchase money character of the lien at this point is uncontested by the Debtors.

On four occasions thereafter, the last such occasion being February 27, 1980, the Debtors and the creditor refinanced or "flipped" the account in order to cure a delinquency and bring the account current. Each refinancing resulted in the opening of a new account with the old account being marked "paid by renewal". The refinancing resulted in the execution of new Promissory Notes which contained variations from the old Notes in the amounts financed, interest rates, payment amounts, payment numbers, and the total of payments. Each renewal note retained the identical collateral used to secure the refinanced note and advanced a sum of additional money. The sums advanced plus the amounts used to payoff the prior note never exceeded the sums of the original obligation to SunAmerica Financial Corporation. The lender considered the prior Promissory Note as paid in full and discharged upon the Debtor's execution of the renewal note.

The question before the Court is whether the security agreement created a purchase money security interest which will render the lien unavoidable under § 522(f). The Debtor contends the renewals by the lender destroyed the purchase money character of the note. In response, the lender denies that the character of the note is changed by merely refinancing it to accommodate the Debtor and asserts that a lender should not be penalized for attempting to assist a Debtor by lightening his financial burdens.

■ The purchase money character of the original lien was destroyed by the advancement of the additional sums and the refinancing of the note. The Uniform Commercial Code defines a security interest as purchase money, "to the extent that it is . . . (b) taken by a person who by making advances or incurring an obligation gives value to enable the Debtor to acquire rights in or the use of collateral if such value is in fact so used". U.C.C. § 9–107. The additional sums advanced by the renewal notes were not used to enable the Debtor to acquire rights in the collateral nor did the refinancing of the original Note enable the Debtor to acquire any additional rights in the collateral.

At least one Court has stated the presence of a future advance clause removes a security interest from the purchase money classification. *In re Simpson*, 4 U.C.C.Rep. 243 (D.C.W.D.Mich.1966) (Dictum). *Cf. In re Norrell*, 426 F.Supp. 435 (D.C.Ga.1977), (holding a security agreement containing an add on clause was not purchase money because it, "purported to make collateral secure debt other than its own price, . . ."). In *Simpson*, the Court relied on the purposes for adopting the U.C.C. to find that the future advance clause removed the security agreement from the purchase money class. That Court's discussion is pertinent here, where the lender has commingled purchase money and non-purchase money advances and distinguishing between the two becomes difficult.

> One of the purposes of the Code is to "simplify, clarify and modernize the law governing commercial transactions". One of the few exceptions to the requirement that notice by filing be a prerequisite to perfection of a security agreement is the purchase money security interest under certain conditions. If a vendor or a lender desires to take advantage of this non-filing requirement, the burden should be on him to prepare a simple instrument which shall be a pure purchase money security agreement without attempting to burden it with complicated and ambiguous impedimenta. Much of the litigation which filled our Courts under pre-code law was due to the effort of adroit drafters to determine how far they could go in concocting instruments that would give maximum rights to vendors and lenders while still qualifying as conditional sales contracts and thus avoiding the necessity of filing. It is hoped that such antics will not occur under the code.

4 U.C.C.Rep. at 248 (citations omitted). The security agreement in the present case contains a future advance clause which uses the collateral to secure debt other than its purchase price. This future advance clause, in itself, is sufficient to extinguish the purchase money character of the security interest under the foregoing authorities. The fact that the lender in this instance filed a financing statement prior to committing any future advances indicates that he questioned the purchase money character of the transaction.

It is unnecessary for this Court to hold that the future advance clause destroys the purchase money character of the security interest since the refinancing alone extinguishes the purchase money character of the security interest. As previously stated, neither the cash advances nor the renewal note enabled the Debtor to acquire rights in the collateral. The purpose of the renewal note was to payoff the original note, an antecedent debt. The purchase money character of the security interest was extinguished when the proceeds from the first renewal note were used to satisfy the original note.

> When a purchase money interest is claimed by a secured party who is not a seller, he must of course have given present consideration. . . . [T]he purchase money party must be one who gives value "by making advances or incurring an obligation": The quoted language excludes from the purchase money category and security interest taken as security for or in satisfaction of a preexisting claim or antecedent debt.

Official Comment 2 of U.C.C. § 9–107. The renewal note which was accepted by the lender in the refinancing of the original note was accepted in satisfaction of an antecedent debt. Therefore, the security interest held under the renewal note is non-purchase money security interest and is avoidable under 11 U.S.C. § 522(f).

■ The lender also asserts the collateral is not a household good held for the household use of the Debtor which qualifies under the avoidance provisions of § 522. The collateral in this instance is a small garden tractor and mower attachment. The tractor and mower were used for yard work and were never used for any commercial venture. There is no evidence that the Debtor made the purchase with any intent to use it for other than his household purposes. This Court considers the garden tractor and mower attachment, which is

used exclusively to mow the Debtor's yard, no less a necessity than a vacuum cleaner. To consider the garden tractor and mower attachment as something other than household goods in this situation would deny the Debtor the basic necessities for the maintenance of his home and would hinder his fresh start.

The foregoing shall constitute Findings of Fact and Conclusions of Law under Bankruptcy Rule 752. IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that the lien is a non-purchase money security interest in household goods held for household use that is avoidable by the Debtor and that judgment be entered accordingly.