In re Stephen W. HARRIS Gayle Ruth Harris, Debtors.

Bankruptcy No. 4–81–00084.

United States Bankruptcy Court, W. D. Kentucky.

Jan. 18, 1982.

Wendell Holloway, Owensboro, Ky., for debtors.

W. Gordon Iler, Owensboro, Ky., for creditor.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy case comes before the Court on objection of a creditor, Commercial Credit Corporation (Commercial), by counsel, to the avoidance of its lien by the debtors pursuant to 11 U.S.C. § 522(f). Previously in the case of *In re Cunningham, et al.*, No. 1–80–00031, issued April 29, 1981, this Court found that a nonpossessory, nonpurchase money lien on exempt property of the debtor consummated after November 6, 1978 (the date of enactment of the Bankruptcy Reform Act of 1978) is avoidable by debtors, does not deprive creditors of due process, and thus 11 U.S.C. § 522(f) has constitutionally permissible application to those liens.

Employing the standard of *Cunningham, supra,* a determination then becomes necessary as to the date upon which a security interest was granted pursuant to the provisions of the Uniform Commercial Code as adopted by the State of Kentucky in Chapter 355 of the Kentucky Revised Statutes, specifically KRS 355.9–101 *et seq.*, and state and federal decisional law.

The history of the transaction or transactions in the instant case is undisputed and is essentially as follows:

On or about October 31, 1977, the debtors borrowed $1,549.25 and executed in favor of Commercial a security agreement covering

numerous items of household furniture. There is evidence of record that a financing statement was filed in the office of the Clerk of the Hopkins County Court on November 9, 1977, thus perfecting the security interest under KRS 355.9–302 and 355.9–402.

On three occasions thereafter, Commercial and the debtors refinanced or "flipped"[1] the account as follows:

On June 2, 1978, the debtors made a second loan with Commercial in the amount of $1,882.21. Debtors paid off the balance remaining on the first loan and pledged as collateral their household furniture. Debtors actually received $452.64. Commercial did not refile and relied upon the prior financing statement.

On January 29, 1979, the debtors made a third loan with Commercial in the amount of $2,873.07. Debtors paid off the balance remaining on the second loan. Debtors actually received $1,092.00 and pledged their household furniture and a 1970 Plymouth automobile as collateral. In February, 1979, Commercial perfected its nonpossessory, nonpurchase money security interest in the debtors' household furniture and automobile by filing a financing statement in accordance with KRS 355.9–402.

On January 31, 1980, the debtors made a fourth loan with Commercial in the amount of $2,710.64 and paid off the balance remaining on the third loan. Debtors actually received no cash and pledged their household furniture and automobile as collateral. Commercial did not refile and relied upon the previous financing statement.

Subsequently, on March 10, 1981, the debtors filed their petition under Chapter 7 of the Bankruptcy Code, and subsequently moved to avoid the creditor's lien on exempt household furniture. The creditor here maintains that the lien is unavoidable because the initial transaction was entered into prior to the enactment date of the Bankruptcy Code and all subsequent transactions are mere renewals which relate back to the original security interest. The debtors contend that the last refinancing on January 31, 1980, is the only valid lien and is subject to avoidance as entered into subsequent to November 6, 1978.

The United States Bankruptcy Court has jurisdiction of the parties and the subject matter of this controversy pursuant to 28 U.S.C. § 1471.

KRS 355.9–204(5) provides:

"(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."

■ "In Kentucky, the rule is that a renewal note does not extinguish the original obligation unless there is a novation." *Cantrill Construction Company v. Carter*, 418 F.2d 705, 707 (6th Cir. 1969), citing *Porter v. Bedell*, 273 Ky. 296, 298, 116 S.W.2d 641 (1938).

■ A "novation is the substitution of a new obligation for an old one, with the intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him." *Truscon Steel Co. v. Thirwell Elec. Co.*, 265 Ky. 414, 417, 96 S.W.2d 1023, 1025 (1936).

It has been found that intent is the essential element in proving a novation. *Cantrill Construction Company v. Carter, supra*, at 707. In *Cantrill*, the Court states: "... [I]t is clear that the parties to the transaction did not intend that the new note was to extinguish the original obligation for the note specifically recites that it is 'Renewal No. 1 Orig. Amt. $30,310.00.' It also recites the date of the original loan and refers to the collateral for that loan. It is difficult to imagine a clearer case than this." *Id* at 707.

---

1. In *In Re Ellis*, 1 B.C.D. 798, 800 (S.D.N.Y. 1975), the Court held, inter alia, that the renewal of an existing loan in connection with an extension of new credit is "flipping"; and the renewal of credit was granted for the convenience of the lender to avoid violations of interest charges under the Small Loan Act.

212

Decided under Tennessee law, the case of *In Re Alston*, 11 B.R. 184, 7 B.C.D. 894 (Bkrtcy.W.D.Tenn.1981), is closely analogous to the situation in the instant case. Here the Court found that there was a novation and that the refinancing of the loan occurring subsequent to the enactment date of the Bankruptcy Reform Act of 1978 was avoidable.

The *Alston* Court relied on the reasoning of *In Re Jones*, 5 B.R. 655 (Bkrtcy.M.D.N.C. 1980). In *Jones, supra*, the bankruptcy court considered the effect of refinancing by a purchase money lender:

"On four occasions thereafter ... the Debtors and the creditor refinanced or 'flipped' the account in order to cure a delinquency and bring the account current. Each refinancing resulted in the opening of a new account with the old account being marked 'paid by renewal' ... Each renewal note retained the identical collateral used to secure the refinanced note and advanced a sum of additional money. The sums advanced plus the amounts used to pay off the prior note never exceeded the sums of the original obligation." *Id* at 656.

In *Jones, supra*, the Court held that the character of the original lien was discharged by the advancement of additional sums and refinancing of the note. The Court suggested that the first refinancing, without regard to any further advances, ended the purchase money character of the debt and held the lender strictly to the form of the transaction.

*Alston, supra*, is in substantial agreement with the reasoning in *Jones, supra*, while asserting that for the purposes of the question to be decided, the purchase money/non-purchase money lender application is a difference without a distinction. The Court in *Alston* states:

"It appears under the reasoning of *In Re Jones, supra*, that the loans in the instant case would be treated as entirely new loans which would place City Finance's security interest clearly within the avoiding authority of Section 522(f)(2)(A) of the Code."

■ This Court is in agreement with the reasoning and result reached in the *Jones* and *Alston* cases. In the instant situation each of the refinancing transactions would also be treated as an entirely new loan. Reinforcing this concept, it may be noted that the third transaction was negotiated on January 29, 1979, and listed additional collateral in the form of an automobile. The date of this note and disclosure statement is also subsequent to the enactment date of the Code. Since the last promissory note and disclosure statement was executed on January 31, 1980, subsequent to the Code's enactment date, Commercial is chargeable with notice of the applicable avoiding authority of § 522(f) and is subject thereto.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, IT IS ORDERED AND ADJUDGED that the lien on household goods of Commercial Credit Corporation be and is subject to avoidance pursuant to 11 U.S.C. § 522 and *In Re Cunningham, et al.*

IT IS FURTHER ORDERED AND ADJUDGED that debtors' motion to avoid the lien of Commercial Credit Corporation be and is sustained.

A copy of this order is mailed to Wendell Holloway, attorney for debtors; and to W. Gordon Iler, attorney for creditor.