**In re Glenda CALLOWAY, Debtor.**

**Bankruptcy No. 4–81–00143.**

United States Bankruptcy Court,
W. D. Kentucky.

Jan. 18, 1982.

Rhonda E. Taylor, Owensboro, for debtors.

W. Gordon Iler, Owensboro, for creditor.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy case comes before the Court on objection of a creditor, Kentucky Finance Company (Kentucky), by counsel, to the avoidance of its lien by the debtors pursuant to 11 U.S.C. § 522(f). Previously in the case of *In Re Cunningham, et al.,* 17 B.R. 463 (1981), this Court found that a nonpossessory, nonpurchase money lien on exempt property of the debtor consummated after November 6, 1978 (the date of enactment of the Bankruptcy Reform Act of 1978) is avoidable by debtors, does not deprive creditors of due process, and thus 11 U.S.C. § 522(f) has constitutionally permissible application to those liens.

Employing the standard of *Cunningham, supra,* a determination then becomes necessary as to the date upon which a security interest was granted pursuant to the provisions of the Uniform Commercial Code as adopted by the State of Kentucky in Chapter 355 of the Kentucky Revised Statutes, specifically KRS 355.9–101 *et seq.,* and state and federal decisional law.

The history of the transaction or transactions in the instant case is undisputed and is essentially as follows:

On or about November 3, 1976, the debtor entered into a retail installment contract for the total amount of $392.91 with seller listed as "Domestic Stereo". The evidence before the Court fails to show that this purchase money security interest was assigned to Kentucky by Domestic Stereo, but since this fact is not contested the Court will assume that to be the situation.

On or about July 14, 1977, the debtor signed a note for $1,320.00 and executed in favor of Kentucky a security agreement covering numerous items of household furniture including the stereo. There is evidence of record that a financing statement was filed in the office of the Clerk of Daviess County Court on July 18, 1977, thus perfecting the security interest under KRS 355.9–302 and 355.9–402.

On four occasions thereafter, Kentucky and the debtor refinanced or "flipped"[1] the account as follows:

On June 5, 1978, the debtor made a third transaction with Kentucky in the amount of $1,440.00. Again, the debtor pledged as collateral her household furniture. Debtor allegedly actually received $218.00. Kentucky did not refile and relied upon the prior financing statement.

On March 8, 1979, the debtor made a fourth refinancing transaction with Kentucky in the amount of $1,530.00. Debtor allegedly actually received $208.97 and pledged her household furniture as collateral.

On October 15, 1979, the debtor made a fifth transaction with Kentucky in the amount of $1,980.00. Debtors allegedly actually received $322.82 and pledged her household furniture as collateral. Kentucky did not refile and relied upon the July 18, 1977, financing statement.

On or about August 28, 1980, the debtor made a sixth transaction with Kentucky in the amount of $1,887.92. Debtor allegedly actually received $110.31 and pledged her household furniture as collateral. Kentucky did not file a new financing statement but apparently relied on the initial filing on July 18, 1977, for perfection. Four of the security agreement copies of record in this case bear a stamp noting "Made again, date ____, No. ____, $____". The security agreement dated March 8, 1979, bears no such stamp. None of the documents before the Court refer in any manner to a filed financing statement or previous security agreement, but all contain a standard 'future advance' clause and an almost identical listing of the collateral to be covered.

Subsequently, on April 13, 1981, the debtor filed a petition under Chapter 7 of the Bankruptcy Code, and thereafter moved to avoid the creditor's lien on exempt household furniture. The creditor here maintains

that the lien is not avoidable because the initial transaction was entered into prior to the enactment date of the Bankruptcy Code and all subsequent transactions are mere renewals which relate back to the original security interest.

The United States Bankruptcy Court has jurisdiction of the parties and the subject matter of this controversy pursuant to 28 U.S.C. § 1471.

KRS 355.9–204(5) provides:

"(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."

"In Kentucky, the rule is that a renewal note does not extinguish the original obligation unless there is a novation." *Cantrill Construction Company v. Carter,* 418 F.2d 705, 707 (6th Cir. 1969), citing *Porter v. Bedell,* 273 Ky. 296, 298, 116 S.W.2d 641 (1938).

A "novation is the substitution of a new obligation for an old one, with the intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him." *Truscon Steel Co. v. Thirwell Elec. Co.,* 265 Ky. 414, 417, 96 S.W.2d 1023, 1025 (1936).

It has been found that intent is the essential element in proving a novation. *Cantrill Construction Company v. Carter, supra,* at 707. In *Cantrill,* the Court states: " . . . [I]t is clear that the parties to the transaction did not intend that the new note was to extinguish the original obligation for the note specifically recites that it is 'Renewal No. 1 Orig. Amt. $30,310.00.' It also recites the date of the original loan and refers to the collateral for that loan. It is difficult to imagine a clearer case than this." *Id* at 707.

---

1. In *In Re Ellis,* 1 B.C.D. 798, 800 (S.D.N.Y. 1975), the Court held, inter alia, that the renewal of an existing loan in connection with an extension of new credit is "flipping"; and the renewal of credit was granted for the convenience of the lender to avoid violations of interest charges under the Small Loan Act.

Decided under Tennessee law, the case of *In Re Alston*, 11 B.R. 184, 7 B.C.D. 894 (Bkrtcy.W.D.Tenn.1981), is closely analogous to the situation in the instant case. Here the Court found that there was a novation and that the refinancing of the loan occurring subsequent to the enactment date of the Bankruptcy Reform Act of 1978 was avoidable.

The *Alston* Court relied on the reasoning of *In Re Jones*, 5 B.R. 655 (Bkrtcy.M.D.N.C. 1980). In *Jones, supra*, the bankruptcy court considered the effect of refinancing by a purchase money lender:

> "On four occasions thereafter ... the Debtors and the creditor refinanced or 'flipped' the account in order to cure a delinquency and bring the account current. Each refinancing resulted in the opening of a new account with the old account being marked 'paid by renewal' ... Each renewal note retained the identical collateral used to secure the refinanced note and advanced a sum of additional money. The sums advanced plus the amounts used to pay off the prior note never exceeded the sums of the original obligation." *Id.* at 656.

In *Jones, supra*, the Court held that the character of the original lien was discharged by the advancement of additional sums and refinancing of the note. The Court suggested that the first refinancing, without regard to any further advances, ended the purchase money character of the debt and held the lender strictly to the form of the transaction.

*Alston, supra*, is in substantial agreement with the reasoning in *Jones, supra*, while asserting that for the purposes of the question to be decided, the purchase money/nonpurchase money lender application is a difference without a distinction. The Court in *Alston* states:

> "It appears under the reasoning of *In Re Jones, supra*, that the loans in the instant case would be treated as entirely new loans which would place City Finance's security interest clearly within the avoiding authority of Section 522(f)(2)(A) of the Code."

This Court is in substantial agreement with the reasoning and result reached in the *Jones* and *Alston* cases—that each of the refinancing transactions would be treated as an entirely new loan. In the instant situation, the purchase money character of the original obligation was extinguished by the advancement of funds under the July 14, 1977, transaction which listed as collateral not only the stereo but numerous additional items of household furniture as well. Although all but one of the security agreements contained a notation stamp stating that it was "Made Again...", no reference is made in any document to the filed financing statement of July 18, 1977, or the original security interest.

Under a totality of the circumstances and facts here, this Court will avoid the nonpossessory, nonpurchase money lien on the household goods. Since the last three refinancing agreements were executed subsequent to the Code's enactment date and two of those transactions were entered into subsequent to the Code's effective date, October 1, 1979, Kentucky is chargeable with notice of the applicable avoiding authority of § 522(f), is subject thereto, and clearly had ample opportunity to further protect its interest in this matter.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, IT IS ORDERED AND ADJUDGED that the lien on household goods of Kentucky Finance Company be and is subject to avoidance pursuant to 11 U.S.C. § 522 and *In Re Cunningham, et al.*

IT IS FURTHER ORDERED AND ADJUDGED that debtors' motion to avoid the lien of Kentucky Finance Company be and is sustained.