**In re Earl HOPPER, Louise Hopper, Debtors.**

**Bankruptcy No. 4–79–00436.**

United States Bankruptcy Court, W. D. Kentucky.

Jan. 27, 1982.

Ronald J. Bamberger, Owensboro, Ky., for debtors.

R. Allen Wilson, Owensboro, Ky., for creditor.

MEMORANDUM AND ORDER

STEWART E. BLÁND, Bankruptcy Judge.

This bankruptcy case comes before the Court on objection of a creditor, Credithrift

---

6. "Disqualification is wasteful and time consuming." *Board of Education v. Nyquist*, 590 F.2d 1241, 1248 (2nd Cir. 1979).

of America, Inc. (Credithrift), by counsel, to the avoidance of its lien by the debtors pursuant to 11 U.S.C. § 522(f). Previously, in the case of *In re Cunningham, et al.*, No. 1–80–00031, issued April 29, 1981, this Court found that a nonpossessory, nonpurchase money lien on exempt property of the debtor consummated after November 6, 1978 (the date of the enactment of the Bankruptcy Reform Act of 1978), is avoidable by debtors, does not deprive creditors of due process, and thus 11 U.S.C. § 522(f) has constitutionally permissible application to those liens.

Employing the standard of *Cunningham, supra*, a determination then becomes necessary as to the date upon which a security interest was granted pursuant to the provisions of the Uniform Commercial Code as adopted by the State of Kentucky in Chapter 355 of the Kentucky Revised Statutes, specifically KRS 355.9–101, *et seq.*, and state and federal decisional law.

A second issue arises in this case as to the effect of § 1323 of the Bankruptcy Code, 11 U.S.C. § 1323, as relates to acceptance or revocation of acceptance of a debtor's proposed Chapter 13 plan prior to confirmation by the Court.

The facts as they pertain to the issues before the Court are uncontroverted and may be briefly recited as follows:

On or about November 9, 1977, the debtors executed a promissory note in the principal amount of $1,364.84, and signed a security agreement granting to Credithrift a security interest in numerous items of household furniture and appliances. There is evidence of record indicating that the security agreement was filed as a financing statement in the Hopkins County Court Clerk's Office on November 14, 1977, thus perfecting the security interest under KRS 355.9–302 and 355.9–402.

The security agreement contains the following as the second sentence in the tenth paragraph: "The Security Agreement shall also secure all renewals hereof and all future advances made by the Secured Party to the Debtors, or either of them, from time to time."

On or about June 13, 1979, the debtors signed a promissory note with Credithrift in the principal amount of $1499.89. Apparently, no security agreement was executed in connection with this note, and Credithrift alleges that the November 14, 1977, filing statement serves as perfection of the interest by virtue of its future advance clause. Appearing on the bottom of the note is the following: "THIS NOTE IS SECURED BY A SECURITY AGREEMENT OF EVEN DATE HEREWITH COVERING *Household Goods*." The note contains no reference to the earlier filed document or the previous transaction, does not itemize the "household goods" secured, nor in any way indicates that this is a renewal or rewrite of the earlier indebtedness.

The debtor filed a joint petition in bankruptcy on December 6, 1979, pursuant to the provisions of Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301, *et seq.*, entitled, "Adjustment of Debts of An Individual With Regular Income." Pursuant to this petition, the debtors filed a proposed plan which provided:

"Claim # 4 by Credithrift of America, Inc., 755 E. Center Street, Madisonville, Kentucky for $1,877.40, secured by a nonpossessory, non-purchase money security interest in exempt property shall be discharged and the lien avoided pursuant to 11 U.S.C. § 522(f)."

On January 24, 1980, Credithrift filed a proof of claim in the amount of $1,678.35 and claimed a security interest in household goods. On the reverse side of this proof of claim is the following:

"11. That claimant accepts the debtor's plan dated *12–6–76*."

The facts surrounding the initial submission of the plan are complex and confusing. Due to this confusion, compounded by the substitution of counsel, a modified plan was filed on March 31, 1980. Simultaneously, a "Motion for Order Confirming Modified Chapter Plan" was filed which set a hearing on the motion (a confirmation hearing) to April 17, 1980. The certification of record indicates that this notice was mailed to all

creditors listed in the debtors' petition. Subsequently, it appears that an "Amended Order of Confirmation" was approved by the Chapter 13 trustee on June 17, 1980, and entered by the Court on July 25, 1980. Thereafter, Credithrift tendered a motion for reconsideration of the order of confirmation, specifically objecting to the provision for avoidance of its lien on household goods. Credithrift asserted that its interest was not subject to avoidance under 11 U.S.C. § 522(f) and argued the unconstitutionality of that subsection.

That constitutional issue was subsequently decided by this Court in *Cunningham, supra*. Now, Credithrift argues that it did not accept the amended plan and received no notice of the proposed avoidance of its lien on household goods until receipt of the order entered July 25, 1980.

The United States Bankruptcy Court has jurisdiction of the parties and the subject matter of this controversy pursuant to 28 U.S.C. § 1471.

KRS 355.9–204(5) provides:

"(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."

■ "In Kentucky, the rule is that a renewal note does not extinguish the original obligation unless there is a novation." *Cantrill Construction Company v. Carter*, 418 F.2d 705, 707 (6th Cir. 1969), citing *Porter v. Bedell*, 273 Ky. 296, 298, 116 S.W.2d 641 (1938).

A "novation is the substitution of a new obligation for an old one, with the intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him." *Truscon Steel Co. v. Thirwell Elec. Co.*, 265 Ky. 414, 417, 96 S.W.2d 1023, 1025 (1936).

It has been found that intent is the essential element in proving a novation. *Cantrill Construction Company v. Carter, supra*, at 707. In *Cantrill*, the Court states: "... [I]t

is clear that the parties to the transaction did not intend that the new note was to extinguish the original obligation for the note specifically recites that it is 'Renewal No. 1 Orig. Amt. $30,310.00.' It also recites the date of the original loan and refers to the collateral for that loan. It is difficult to imagine a clearer case than this." *Id.* at 707.

Decided under Tennessee law, the case of *In re Alston*, 11 B.R. 184, 7 B.C.D. 894 (W.D.Tenn.1981), is similar to the situation in the instant case. Here the Court found that there was a novation and that the refinancing of the loan occurring subsequent to the enactment date of the Bankruptcy Reform Act of 1978 was avoidable.

The *Alston* Court relied on the reasoning of *In re Jones*, 5 B.R. 655 (M.D.N.C.1980). In *Jones, supra*, the bankruptcy court considered the effect of refinancing by a purchase money lender:

"On four occasions thereafter ... the Debtors and the creditor refinanced or 'flipped' the account in order to cure a delinquency and bring the account current. Each refinancing resulted in the opening of a new account with the old account being marked 'paid by renewal' ... Each renewal note retained the identical collateral used to secure the refinanced note and advanced a sum of additional money. The sums advanced plus the amounts used to pay off the prior note never exceeded the sums of the original obligation." *Id.* at 656.

In *Jones, supra*, the Court held that the character of the original lien was discharged by the advancement of additional sums and refinancing of the note. The Court suggested that the first refinancing, without regard to any further advances, ended the purchase money character of the debt and held the lender strictly to the form of the transaction.

*Alston, supra*, is in substantial agreement with the reasoning in *Jones, supra*, while asserting that for the purposes of the question to be decided, the purchase money/nonpurchase money lender application is a difference without a distinction. The Court in *Alston* states:

"It appears under the reasoning of *In re Jones, supra,* that the loans in the instant case would be treated as entirely new loans which would place City Finance's security interest clearly within the avoiding authority of Section 522(f)(2)(A) of the Code."

■ This Court is in substantial agreement with the reasoning and result reached in the *Jones* and *Alston* cases. In the instant situation the character of the nonpurchase money, nonpossessory security interest is undisputed. Here, there is no reference of the promissory note to the prior transaction which would in any way relate the note to the future advance clause contained in the previous agreement. In fact, the note states that it is relative to a security agreement of "even date", and no such security agreement has been offered in evidence. Thus the Court is constrained to hold that since the promissory note of June 13, 1979, would be treated as a separate and distinct transaction entered into subsequent to the Code's enactment date, Credithrift is chargeable with notice of the avoiding authority of § 522(f) and is subject thereto.

11 U.S.C. § 1323 provides that:

"(a) The debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1322 of this title. . . .

(c) Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, *unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection.* (Emphasis added.)

■ An acceptance or rejection of a chapter 13 plan prior to its modification under section 1323 filed by the holder of a secured claim is binding with respect to the modified plan unless (1) the modification changes the rights of the holder and (2) the holder changes its earlier acceptance or rejection. A literal application of section 1323(c) precludes the withdrawal of a previous rejection (or acceptance), unless the rejecting party's rights are modified. The legislative history of section 1323(c) tends to support this literal interpretation. 5 *Collier on Bankruptcy,* ¶ 1323.01[4] (15th Ed. 1981).

In the case at bar, the Court need not go beyond the literal interpretation expounded by *Collier.* Here, no change from the earlier acceptance was ever submitted by the creditor. More importantly, having determined that the creditor holds a nonpurchase money, nonpossessory lien in household goods claimed exempt by the debtors, which was consummated after the enactment date of the Bankruptcy Reform Act of 1978, the creditor's lien is now and has been subject to avoidance pursuant to section 522(f). Therefore, we fail to see how the creditor's rights have been impaired or changed under the Chapter 13 plan, and thus this issue is rendered moot.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, IT IS ORDERED AND ADJUDGED that the lien of Credithrift on household goods be and is subject to avoidance by the debtors pursuant to 11 U.S.C. § 522(f) and *In Re Cunningham, et al.*

IT IS FURTHER ORDERED AND ADJUDGED that the lien of Credithrift be and is avoided pursuant to the Court's July 25, 1980, Amended Order of Confirmation.