**In re Jimmy Ray WILSON, June Carolyn Wilson, Debtors.**

**Bankruptcy No. 4–80–00201.**

United States Bankruptcy Court,
W. D. Kentucky.

Feb. 2, 1982.

Russell L. Wilkey, Owensboro, Ky., for debtors.

W. Gordon Iler, Owensboro, Ky., for creditor.

MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This bankruptcy case comes before the Court on objection of a creditor, Thorp Credit Company of Kentucky (Thorp), by counsel, to the avoidance of its lien by the debtors pursuant to 11 U.S.C. § 522(f). Previously in the case of *In re Cunningham, et al.*, No. 1–80–00031, issued April 29, 1981, this Court found that a nonpossessory, non-purchase money lien on exempt property of

the debtor consummated after November 6, 1978 (the date of enactment of the Bankruptcy Reform Act of 1978) is avoidable by debtors, does not deprive creditors of due process, and thus 11 U.S.C. § 522(f) has constitutionally permissible application to those liens.

Employing the standard of *Cunningham, supra,* a determination then becomes necessary as to the date upon which a security interest was granted pursuant to the provisions of the Uniform Commercial Code as adopted by the State of Kentucky in Chapter 355 of the Kentucky Revised Statutes, specifically KRS 355.9–101, *et seq.,* and state and federal decisional law.

The history of the transaction or transactions in the instant case is undisputed and is essentially as follows:

On or about October 3, 1977, the debtors borrowed approximately $600.00 and executed in favor of Thorp a security agreement covering numerous items of household furniture. There is evidence of record that a financing statement covering the household goods was filed in the office of the Clerk of the Daviess County Court in October, 1977, thus perfecting the security interest under KRS 355.9–302 and 355.9–402.

On three occasions thereafter, Thorp and the debtors refinanced or "flipped"[1] the account as follows:

On June 19, 1978, it is alleged that debtors made a second loan with Thorp in some amount. The particular security agreement is not in evidence, nor is there in the record a filed financing statement relative to this agreement.

On or about July 13, 1979, the debtors executed a loan in the total amount of $3600.00. The security agreement purports to cover listed household goods and a 1975 Ford automobile. A financing statement was filed in July, 1979, listing the automobile. We are unable to ascertain from the filed statement copy whether the household goods clause was marked as security for this indebtedness.

**1.** In *In re Ellis,* 1 BCD 798, 800 (S.D.N.Y.1975), the Court held inter alia, that the renewal of an existing loan in connection with an extension of new credit is "flipping"; and the renewal of

On or about June 19, 1980, the debtors made a final transaction with Thorp. There is a note in the amount of $4824.00 as the total amount of all payments with the sum of $3770.96 representing the amount financed. A financing statement was filed relative to this transaction on June 27, 1980, which lists a purchase money security interest in one (1) Murray Riding Lawnmower, one (1) Weedeater Grass Trimmer and one (1) Lawnboy Lawnmower. The security agreement lists as security for this account a number of household goods, the 1975 Ford automobile, and set apart on one side of the page three items with double asterisks, being the lawn care equipment described earlier. The caption above these items reads: "* * * Purchase Money Security Interest in the Following:".

It may be noted that the note of this date contains the following notation: "This Loan is secured by: ... $\overline{X}$ Security Agreement(s) dated *10–3–77 6–19–78 7–13–79 6–19–80* ... which cover ... $\overline{X}$ Motor Vehicle(s): Ford ... Other (Describe) *1 Murray Riding* Mower 1 Weedeater 1 Lawnby [sic] Mower.

Subsequently, on June 4, 1981, the debtors filed their petition under Chapter 7 of the Bankruptcy Code, and thereafter moved to avoid the creditor's lien on household furniture. The creditor here maintains that the lien as to the household furniture is unavoidable because the initial transaction was entered into prior to the enactment date of the Bankruptcy Code, and all subsequent transactions are mere renewals which relate back to the original security interest. The debtors contend that the last refinancing on June 19, 1980, is the only valid lien and is subject to avoidance as entered into subsequent to November 6, 1978.

The United States Bankruptcy Court has jurisdiction of the parties and the subject matter of this controversy pursuant to 28 U.S.C. § 1471.

KRS 355.9–204(5) provides:

credit was granted for the convenience of the lender to avoid violations of interest charges under the Small Loan Act.

352

"(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."

"In Kentucky, the rule is that a renewal note does not extinguish the original obligation unless there is a novation." *Cantrill Construction Company v. Carter*, 418 F.2d 705, 707 (6th Cir. 1969), citing *Porter v. Bedell*, 273 Ky. 296, 298, 116 S.W.2d 641 (1938).

A "novation is the substitution of a new obligation for an old one, with the intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him." *Truscon Steel Co. v. Thirwell Elec. Co.*, 265 Ky. 414, 417, 96 S.W.2d 1023, 1025 (1936).

It has been found that intent is the essential element in proving a novation. *Cantrill Construction Company v. Carter, supra*, at 707. In *Cantrill*, the Court states: "...[I]t is clear that the parties to the transaction did not intend that the new note was to extinguish the original obligation for the note specifically recites that it is 'Renewal No. 1 Orig. Amt. $30,310.00.' It also recites the date of the original loan and refers to the collateral for that loan. It is difficult to imagine a clearer case than this." *Id* at 707.

Decided under Tennessee law, the case of *In re Alston*, 11 B.R. 184, 7 BCD 894 (Bkrtcy.W.D.Tenn.1981), is similar to the situation in the instant case. Here the Court found that there was a novation and that the refinancing of the loan occurring subsequent to the enactment date of the Bankruptcy Reform Act of 1978 was avoidable.

The *Alston* Court relied on the reasoning of *In re Jones*, 5 B.R. 655 (Bkrtcy.M.D.N.C. 1980). In *Jones, supra*, the bankruptcy court considered the effect of refinancing by a purchase money lender:

"On four occasions thereafter...the Debtors and the creditor refinanced or 'flipped' the account in order to cure a delinquency and bring the account current. Each refinancing resulted in the opening of a new account with the old account being marked 'paid by renewal' ...Each renewal note retained the identical collateral used to secure the refinanced note and advanced a sum of additional money. The sums advanced plus the amounts used to pay off the prior note never exceeded the sums of the original obligation." *Id.* at 656.

In *Jones, supra*, the Court held that the character of the original lien was discharged by the advancement of additional sums and refinancing of the note. The Court suggested that the first refinancing, without regard to any further advances, ended the purchase money character of the debt and held the lender strictly to the form of the transaction.

*Alston, supra*, is in substantial agreement with the reasoning in *Jones, supra*, while asserting that for the purposes of the question to be decided, the purchase money/non-purchase money lender application is a difference without a distinction. The Court in *Alston* states:

"It appears under the reasoning of *In Re Jones, supra*, that the loans in the instant case would be treated as entirely new loans which would place City Finance's security interest clearly within the avoiding authority of Section 522(f)(2)(A) of the Code."

This Court is in agreement with the reasoning and result reached in the *Jones* and *Alston* cases. In the instant situation each of the refinancing transactions would also be treated as an entirely new loan. Reinforcing this concept, it may be noted that the third transaction was negotiated on July 13, 1979, and listed additional collateral in the form of the Ford automobile. The date of this note and disclosure statement is also subsequent to the enactment date of the Code. Since the last promissory note and disclosure statement was executed on June 19, 1980, subsequent to the Code's enactment date, Thorp is chargeable with notice of the applicable avoiding authority of § 522(f).

There is a document of record which reads as follows: "I warrant that I will use $1155.00 of todays loan proceeds to purchase 1 Riding mower (Murray,! Weedeater & 1 1 lawn boy mower [sic] which is collateral for the loan." This document is signed by the husband debtor and is dated 6–19–80. It must be assumed that the document was an addendum to the note and security agreement of the same date.

The items listed as purchase money security (the lawn equipment) are clearly set apart and identified, and the above referenced addendum would indicate that $1155.00 of the proceeds were utilized for the purchase of the lawn equipment. Thus, to this extent, at least, the purchase money security interest is not subject to avoidance. Likewise, the Ford automobile, which is also delineated and adequately described in the documents relating to the final transaction, remains as security for the indebtedness. However, that portion of the lien as it relates to household furniture is subject to avoidance under § 522(f) as it merely refers the final note and security agreement to other prior unfiled security agreements by date without any reference to the filed financing statement of October, 1977.

Under a totality of the circumstances and facts here, this Court will avoid the nonpossessory, nonpurchase money lien on the household furniture. Thorp is subject to the applicable avoiding authority of § 522(f) and clearly had ample opportunity to reperfect or further protect its interest in regard to the household furniture.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, IT IS ORDERED AND ADJUDGED that to the extent that the lien is an interest in household furniture of Thorp Credit Company of Kentucky, it is subject to avoidance pursuant to 11 U.S.C. § 522 and *In re Cunningham, et al.*

IT IS FURTHER ORDERED AND ADJUDGED that debtors' motion to avoid the lien of Thorp Credit Company be and is sustained to the extent that the lien applies to household furniture.