In the Matter of Richard GOARD Debtor.

SCHEWEL FURNITURE COMPANY, INC., Plaintiff,

v.

Richard GOARD and Charles M. Ivey, Chapter 7 Trustee, Defendants.

Bankruptcy No. B–82–01220 C–7. Adv. No. A–82–0665.

United States Bankruptcy Court, M.D. North Carolina.

Dec. 17, 1982.

Theodore Nodell, Raleigh, for Schewel Furniture Co.

Wayne Crumwell, Roxboro, for Richard Goard.

Charles M. Ivey, Greensboro, for trustee.

## ORDER

RUFUS W. REYNOLDS, Bankruptcy Judge.

On November 4, 1982, a hearing was held upon the complaint filed by Schewel Furniture Company, Inc. seeking relief from stay to foreclose upon furniture and other household goods purchased by the debtor, Richard Goard. In support of its request, the plaintiff, a retail seller of household furniture and appliances, contends that it has a purchase money security interest in the goods as evidenced by numerous purchase security agreements entered into with the debtor. The first purchase money security agreement was executed on May 3, 1979. Subsequent purchases were made over a three-year period. On each occasion, a new purchase money security agreement was executed, and in most instances, the balance owing on the last prior agreement was consolidated for payment in the new agreement. Monthly payments were modified to accommodate the new balance. The plaintiff indicated on each consolidating agreement the execution date and certificate number of the prior agreement and the pre-existing balance which was carried over for consolidation with new purchases. Each agreement, which listed the items purchased at its execution, was retained by the plaintiff after the balance indicated was consolidated into a new agreement. The last agreement which incorporated earlier balances was dated March 12, 1982.

Whether the consolidation agreements extinguished the purchase money nature of prior purchases is the issue before this Court. Plaintiff contends that the goods for which payment has not been made remain subject to its purchase money security interest despite consolidation of balances upon subsequent purchases by the debtor. Each purchase money security agreement was retained and incorporated by reference into a later agreement, thereby allowing identification of each item purchased even after consolidation. The debtor, who seeks to exempt the furniture pursuant to 11 U.S.C. § 522 and N.C.G.S. § 1C–1601(a)(4), contends that the consolidation of agreements and modification of payment terms extinguished the purchase money nature of all purchases which were consolidated for payment. Under this argument, only those items purchased at the execution of the last consolidation agreement would retain their purchase money character. Pursuant to N.C.G.S. § 1C–1601(e)(5), property subject to a purchase money security interest is not available for exemption by a debtor.

This Court is of the opinion that the plaintiff has a purchase money security interest in the debtor's furniture and relief from stay should be granted. In this case, the plaintiff as seller financed numerous purchases of furniture and other household goods by the debtor. As succeeding purchases were made, consolidation of the debtor's previous balance into a new balance with new monthly payments was done as a convenience to the plaintiff. All security agreements were retained and not defaced in any way. Each security agreement which consolidated balances due clearly referred to the agreement being incorporated so as to create a link between all the agreements. This procedure permitted easy determination of what goods were bought under each contract.

In 1971, the North Carolina General Assembly recognized the right of a seller and buyer to consolidate one consumer credit installment sale contract with another by enacting the following statute:

§ 25A–31. Consolidation and refinancing.

(a) A seller and a buyer may agree at any time to refinance an existing consumer credit installment sale contract or to consolidate into a single debt repayable on a single schedule of payments, two or more consumer credit installment sale contracts.

(b) A refinancing or consolidation agreement must be in writing, dated and signed by the parties.

(c) The refinancing or consolidation agreement may provide for a finance charge which shall not exceed the rates provided in G.S. 25A–15, with the amount financed or consolidated, less the rebate provided by G.S. 25A–32. In computing the rebate to be credited to the previous time balances for purposes of this section, no prepayment charge shall be imposed.

Even though the right to consolidate or refinance exists, a seller's willingness to do so may be affected by recent bankruptcy decisions. Several Bankruptcy Courts have held that the purchase money status of a consumer credit installment sale may be lost when refinanced or consolidated with loans or other indebtedness. *See In Re Jones*, 5 B.R. 655, 6 B.C.D. 848 (Bkrtcy.M.D.N.C.1980).

As N.C.G.S. § 25A–31(b) reveals, the only statutory requirement governing the terms of refinancing or consolidation agreements is that the agreements must be in writing, dated, and signed by the parties. However, upon consolidation of two or more installment sale contracts, N.C.G.S. § 25A–27(b) requires the seller to apply payments as follows:

(1) The entire amount of all payments received prior to the consolidation shall be applied to the respective contracts under which the payments were made, and

(2) All subsequent payments shall be applied to the various contracts in the same proportion or ratio as the original cash prices in the various contracts bear to one another, except that, where the amount of the installment payment is increased after the consolidation, the seller shall have the option to apply the amount of the increase to the contract last executed and the balance of subsequent payments to all contracts on a cash price pro rata basis.

The purpose of such application is to permit a determination of the amount of the debt secured by each of the various security agreements. A similar application is required where a seller in a consumer credit sale makes a subsequent sale to a buyer and takes a security interest in goods previously purchased by the buyer from the seller. N.C.G.S. § 25A–27(a). In the event a dispute arises concerning application of payments, the statutory guidelines established by § 25A–27 must be followed. No such dispute has arisen in the present case.

It should be noted that N.C.G.S. § 25A–31(b) does not require the consolidation or refinancing agreement to provide for apportionment in its written terms. The purchase money character of agreements which are refinanced or consolidated is not destroyed by failure to provide for apportionment. *Contra Dossenbach's of Clinton v. Beasley (In re Beasley)* 23 B.R. 404 (Bkrtcy.E.D.N.C.1982). The apportionment requirements of N.C.G.S. § 25A–27 inherently recognize the continuing purchase money nature of installment sale contracts which are consolidated in that payments must be applied to the various contracts in the same proportion or ratio as the original cash prices in the various contracts bear to one another.

Accordingly, this Court concludes that the plaintiff's purchase money security interest remains intact as to all goods purchased pursuant to the series of contracts executed by the debtor and for which payment has not been made.

IT IS THEREFORE ORDERED that the plaintiff's request for relief from stay is hereby granted.