**In re Timothy Ray SHERMAN, Gail N. Sherman, Debtors.**

**Bankruptcy No. 87–00134–MO4.**

United States Bankruptcy Court, E.D. North Carolina.

July 10, 1987.

Algernon L. Butler, Wilmington, N.C., for debtors.

Richard Stearns, Kinston, N.C., Chapter 7 Trustee.

Robert Bowers, New Bern, N.C., for creditor.

## MEMORANDUM OPINION AND ORDER

THOMAS M. MOORE, Chief Judge.

This matter is before the court on the motion to avoid lien and for redemption filed by the debtors on February 18, 1987, and on the countermotion to lift the stay filed by Snap–On–Tools on March 4, 1987. The debtors seek to avoid the lien of Snap–On–Tools Corporation on certain tools purchased from Snap–On–Tools and Snap–On–Tools seeks to lift the stay as to those tools.

The debtors contend that the lien of Snap–On–Tools is avoidable as a nonpurchase money lien under 11 U.S.C. § 522(f)(2)(B). Snap–On–Tools alleges that it retained a purchase money security interest in all of the tools it sold to the debtors and requests that the automatic stay be lifted as to these tools.

After a review of the evidence, the court finds the following:

### FINDINGS OF FACT

The male debtor is a mechanic who filed a joint bankruptcy petition with his wife on January 15, 1987. Prior to this filing, he made several purchases of tools on credit with Snap–On–Tools. The first transaction occurred on April 16, 1986. At the time, the debtor incurred a debt of One Thousand One Hundred Twenty-seven and 76/100 Dollars ($1,127.76) (which included interest) to Snap–On–Tools and gave the seller a purchase money security interest in all of the tools purchased.

On July 30, 1986, the debtor again purchased tools from Snap–On–Tools. At the time, the outstanding balance owed from the first transaction was combined with the new debt to give the debtor a total amount owed. Snap–On–Tools took a purchase money security interest in the tools it sold.

On November 4, 1986, the debtor purchased tools from Snap–On for a third time. Again the prior outstanding balance

was combined with the new debt to give the debtor a total amount owed. As in the prior sales, Snap–On took a purchase money security interest in the tools sold.

Each of the purchase money security agreements entered into between the debtor and Snap–On–Tools contained the following provision:

> If the net balance due on account from prior Purchase Money Security Agreements is transferred to this agreement in Item 5 of Terms of Sale, it is intended by the parties that Secured Party shall retain a purchase money security interest in the property purchased under and described in prior agreements, which are incorporated herein by reference, to the extent such property secures its purchase money, applying a First In First Out method of payment allocation to the Time Balance. When the prior purchase money Time Balance has been paid, the Secured Party retains a nonpurchase money security interest in the property described in prior agreements as security for the net balance due and the performance of any other obligations hereunder.

This provision called for payments to be applied to the outstanding debt on a "first in, first out" basis. This means payments were first credited to the debt from the initial purchase and as these goods were paid for, the purchase money security interest was transformed into a nonpurchase money security interest.

Snap–On–Tools did not record the security agreement. Once the price of a tool was paid for, Snap–On–Tools then held an unperfected nonpurchase money security in the tools.

The debtors contend that by adding the balance owed from prior debts to subsequent debts, Snap–On–Tools was refinancing the earlier debts. They further contend that this caused the purchase money security interest to lose its character as such and therefore became a lien avoidable in the bankruptcy court. Snap–On–Tools contends that the security interest was not a blanket interest on all of the tools sold, but only on those that had not been paid

off after applying a "first in, first out" process to the payments.

## ISSUE

The issue is whether the seller retains a purchase money security interest in property when the debt created by the purchase of the property is consolidated with debt incurred in a subsequent transaction.

## STATEMENT OF THE CASE

A security interest is a "purchase money security interest" to the extent that it is (a) taken or retained by the seller of the collateral to secure all of its price; or (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used. N.C.GEN.STAT. § 25–9–107. A problem arises when a seller takes a purchase money security interest in goods sold and then a subsequent sale occurs and the seller consolidates the balance due from the first sale with the amount just financed. Not only does the seller consolidate the amount owed, but also the collateral securing the debt. The seller claims to hold a purchase money security interest in all of the goods sold "to the extent that they secure all or part of the purchase price."

Courts have faced this problem before and have developed two solutions to the problem. The first solution is called the "transformation rule." The transformation rule states that "if collateral secures its own purchase price as well as the purchase price of other goods, the purchase money security interest existing prior to the 'add on' contract is transformed into a nonpurchase money security interest." *Bond's Jewelers, Inc. v. Linklater*, (*In re Linklater*), 48 B.R. 916, 918 (Bankr.Nev. 1985). This leaves the seller only with a purchase money security interest in the goods sold in the last transaction.

The other solution to this problem that the courts have used is the "dual status theory." The dual status theory "states that the existence of a nonpurchase money security interest in goods does not termi-

nate a purchase money security interest in those goods to the extent that the collateral continues to secure its own price." *Id.* at p. 919. To apply this rule, the court needs to determine to what extent the goods secure their purchase price and to what extent they secure the purchase price of other goods. If the court can make this allocation, then the seller will keep a purchase money security interest to the extent that the collateral has not been fully paid for.

This jurisdiction has not yet directly dealt with the issue at hand. The Fourth Circuit Court of Appeals has stated that a seller loses a purchase money security interest in goods when the previous debt is refinanced and the goods continue to secure the debt. *Dominion Bank of Cumberlands, N.A. v. Nuckolls,* 780 F.2d 408 (4th Cir.1985). This case dealt with an extinguishment of a prior loan by a refinancing of the debt. The debtors had received two loans from the bank in the amounts of Two Thousand Five Hundred and No/100 Dollars ($2,500) and Three Thousand Five Hundred and No/100 Dollars ($3,500) in order to purchase restaurant equipment. The bank at this time had a purchase money security interest in the equipment. No payments were made on these loans. The debtors subsequently received a third loan ($7,000) from the bank which was used to pay off the existing loans plus provide the debtors with cash. The debtors pledged their restaurant equipment as collateral for the third loan. The court held that the bank did not have a purchase money security interest because the proceeds of the third loan were not used to purchase the restaurant equipment. The present facts do not deal with the extinguishment of an old debt through refinancing, but rather deal with the consolidation of debts. Because the prior debts of the debtor were not extinguished when the balances were consolidated, and because the purchase money security was maintained only until the goods were paid for, Snap–On–Tools did not refinance the debt and therefore *Dominion Bank* is not applicable to the current facts.

Another case within this jurisdiction that dealt with a similar issue was *In re Jones,*

5 B.R. 655 (Bankr.M.D.N.C.1980). Here, the debtors borrowed money from SunAmerica Financial Corporation to buy a garden tractor. The loan proceeds were contemporaneously and simultaneously paid to the retailer upon receipt of them by the debtors. SunAmerica at this time had a purchase money security interest in the tractor. On four subsequent occasions, the debtors and SunAmerica refinanced the loan in order to cure a delinquency. Each refinancing extinguished the previous debt and caused a new loan to be executed. The issuance of the subsequent loans did not allow the debtors to purchase the tractor, so the purchase money security interest of the creditor was extinguished. This case is similar to the *Dominion Bank* case in that the prior debt was extinguished upon a subsequent extension of credit. The subsequent extensions of credit did not go towards the purchase of goods, but only to the curing of a delinquency on a prior debt. It is clear that the goods purchased through the initial loan could not be purchase money collateral for the subsequent loans. However, the current facts indicate that the consolidation of debts was not done to refinance the initial purchase. The debts were consolidated to allow the debtors to make one monthly payment instead of several. Each subsequent transaction between the debtors and Snap–On–Tools allowed the debtors to acquire new goods. Snap–On–Tools does not maintain a purchase money interest in goods purchased in transaction number one for goods purchased in transaction number three if the goods initially purchased are paid for. Snap–On–Tools only contends that they have a purchase money interest in goods until they are paid for after applying a "first in, first out" method of payment allocation. The consolidation of debts by Snap–On–Tools is not a refinancing of debt and therefore the *Dominion Bank* ruling and the *Jones* ruling are not applicable in this case.

The court, faced with the two solutions to this problem, must decide which rule to follow. This court has dealt with this problem in the past except that the collateral

was consumer goods rather than tools. *Dossenbach's of Clinton, Inc. v. Bartelt, Trustee (In re Beasley)*, 23 B.R. 404 (Bankr.E.D.N.C.1982). The fact that consumer goods were involved brought the North Carolina Retail Installment Sales Act into play. N.C.GEN.STAT. § 25A–1, et al. This act provides a method for applying payments to consolidated purchases on a pro rata basis. N.C.GEN.STAT. § 25A–27. This court held that the seller did not follow the statutorily imposed pro rata application of payments and therefore did not have a purchase money security interest in any goods sold except the goods sold in the last transaction. *In re Beasley,* at p. 406. If the plan of apportionment had been followed, then the seller would have retained its purchase money security interest in the goods to the extent that they had not been paid for.

Although the present facts do not deal with consumer goods, and therefore N.C. GEN.STAT. § 25A–1, et al., is not applicable, the same logic can be applied as was applied in *In re Beasley.* The purchase money security agreement entered into between the debtor and Snap–On–Tools contained a provision that allocated payments made by the debtor to the various purchases. According to this provision, a "first in, first out" method was used to apply payments to the debt. This means payments were credited first to the initial purchase until all of those items were paid for. At that time, the seller then relinquished its purchase money security interest in those goods.

This application of payments is fair to both the buyer and seller in that it allows the buyer to hold the goods initially purchased free from the seller's purchase money security interest sooner than it would if the payments were applied pro rata to all purchases. It also protects the seller in that it gives him protection and a security interest in the goods sold until they are fully paid for. This method of payment application followed by Snap–On–Tools was fair to both parties and as it was followed, allowed it to maintain its purchase money security interest in the tools until fully paid for.

There are legitimate business reasons that justify the consolidation of debts and security when several transactions occur. It is more convenient for both the buyer and seller when two or more sales are combined to create one outstanding debt. The buyer need only make one monthly payment instead of several monthly payments. It also allows the seller to maintain one account for the buyer rather than several. The consolidation of accounts significantly cuts down on paper work for all parties and simplifies the payment process. Also, the "first in, first out" method allows for a systematic application of payments to the goods held as security.

Another reason for following the dual status rule rather than the transformation rule is that the security agreement executed by the debtor provided for consolidating debts. The contract provided that upon consolidation of debts, all of the goods would act as security for the debt. After applying the "FIFO" method of payment allocation, the seller would relinquish his purchase money security interest in the goods as they were paid for. Once paid for, the seller retained an avoidable non-purchase money security interest in the goods. If there was no provision for consolidating debt or no method for the application of payments in the security agreement, then the purchase money security interest initially held by the seller would have been destroyed. However, the security agreement used by the parties contained all of the necessary provisions and so it is a contract that the parties should abide by.

With respect to the items purchased on November 4, 1986, the debtors executed a purchase money security agreement which clearly gave Snap–On–Tools a purchase money security interest in those items. However, these tools may be redeemed by the debtors pursuant to 11 U.S.C. § 722.

### CONCLUSION

The consolidation of the three loan agreements by Snap–On–Tools did not destroy its purchase money security interest in the tools it sold to the debtors. The security agreements provided for a "FIFO" method

of application of the payments to the outstanding debt and to the extent that there remains a debt on these purchases, Snap-On-Tools is secured. If, after the application of payments, the tools of the first or second purchases are fully paid for, then the purchase money security interest in these tools is lost. Now therefore,

IT IS ORDERED, ADJUDGED AND DECREED that the debtors' motion to avoid lien and for redemption is denied, provided that the sum of all payments made by the debtors does not fully pay for their purchase.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if the sum of all payments made fully pays for the purchase of the tools in the first transaction, then the purchase money security interest of Snap-On-Tools is avoided as to those tools because the creditor's security interest is an unperfected nonpurchase money security interest.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the motion to lift the automatic stay under 11 U.S.C. § 362 filed by Snap-On-Tools is allowed as to those tools whose purchase price has not fully been paid after the first in, first out application of payments to the outstanding debt.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the tools purchased in the November 4, 1986, transaction may be redeemed by the debtor paying Snap-On-Tools Two Hundred Fifty-one and 46/100 Dollars ($251.46), which is the amount of the secured claim of the creditor for this transaction.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the tools purchased in the July 30, 1986, transaction may be redeemed by the debtors paying Snap-On-Tools One Thousand One Hundred Fifty and 96/100 Dollars ($1,150.96), less any amount previously credited to this purchase, which is the amount of the secured claim of the creditor for this transaction.