In the matter of James Elwood **BEASLEY** and Berline Ammons Beasley, Debtors.

**DOSSENBACH'S OF CLINTON, INC., Plaintiff,**

v.

**Robert H. BARTELT, Standing Trustee, James Elwood Beasley, and Berline Ammons Beasley, Defendants.**

Bankruptcy No. 82–00471–3.
Adv. No. 82–0478–AP.

United States Bankruptcy Court, E. D. North Carolina.

Sept. 28, 1982.

Theodore A. Nodell, Raleigh, N. C., for plaintiff.

William M. Bacon, III, Clinton, N. C., for defendants.

## OPINION AND ORDER

THOMAS M. MOORE, Bankruptcy Judge.

This matter comes on to be heard upon the Complaint for relief from the automatic stay provision of 11 U.S.C. § 362.

After considering all the evidence, this Court finds the facts to be as follows:

### FINDINGS OF FACT

Creditor-Plaintiff, Dossenbach's of Clinton, Inc., is a retail seller of household furniture and appliances. On December 22, 1976, Debtor-Defendant James Elwood Beasley executed a loan agreement with Dossenbach's of Clinton, Inc., hereinafter referred to as Creditor, for the purpose of financing Debtor's purchase of items of household furniture from Creditor. Under the terms of the agreement, Creditor retained a security interest in the purchased goods until such time as the loan amount and finance charges were paid by Debtor. Debtor was to pay a total of One Thousand One Hundred Ninety-Four and 66/100 Dollars ($1,194.66) in twenty-four (24) monthly installments of Forty-Five and 44/100 Dollars ($45.44).

One year later, on December 23, 1977, Debtor purchased additional items of household furniture from Creditor for Three Hundred One and 45/100 Dollars ($301.45). A balance remained owing on Debtor's previously executed loan agreement of December 22, 1976. Debtor and Creditor agreed that the balance owed on the December 22, 1976, loan would be consolidated with the costs of the December 23, 1977, purchase, and the total would be financed by a new loan agreement between Debtor and Creditor. On December 23, 1977, Debtor executed a new loan agreement with Creditor in the described consolidated amount. This new agreement called for a total payment of One Thousand Three Hundred Eleven and 29/100 Dollars ($1,311.29) in twenty-four (24) monthly installments of Fifty-Four and 46/100 Dollars ($54.46).

About fourteen (14) months later, on February 17, 1979, Debtors-Defendants, James

Elwood Beasley and Berline Ammons Beasley, hereinafter referred to collectively as Debtors, purchased a household appliance from Creditor for Five Hundred Nineteen and 95/100 Dollars ($519.95). A balance remained owing on Debtor-Defendant James E. Beasley's previously executed loan agreement of December 23, 1977. Debtors and Creditor agreed that the balance owed on the December 23, 1977, loan would be consolidated with the costs of the February 17, 1979, purchase, and the total would be financed by a new loan agreement. On February 17, 1979, Debtors executed a new loan agreement with Creditor in the described consolidated amount. This new agreement called for a total payment of One Thousand Five Hundred Sixty and 38/100 Dollars ($1,560.38) in twenty-four (24) monthly installments of Sixty-Two and 77/100 Dollars ($62.77).

Each of the three contracts executed between Debtors, or Debtor, and Creditor contained a standard clause covering the situation where a pre-existing unpaid purchase loan balance owed Creditor was consolidated with a new purchase-money loan. The clause stated, in pertinent part, that " . . . the contracts, whether one or more, heretofore entered into between Seller and Buyer . . . shall remain in full force and effect, that Seller's security interest in the goods sold thereunder shall remain perfected, and that the contract evidenced by this instrument shall have no effect on the above-mentioned existing contracts except to modify the terms of payment thereof. It is further agreed, however, that for the purposes of the payment of the said old balance . . . Buyer shall make one payment in the amount and for the period set forth below until the total time balance as set forth has been paid."

On March 5, 1982, Debtors filed a joint petition under Chapter 13 of the Bankruptcy Code. The case was converted to a Chapter 7 straight bankruptcy on June 3, 1982. Creditor, Dossenbach's of Clinton, Inc., claims a purchase-money security interest in the goods purchased under the three contracts discussed above and has filed a complaint to have the automatic stay lifted as to those goods.

## CONTENTIONS OF PARTIES

The Creditor-Plaintiff contends that it has a purchase-money security interest in all of the goods sold under the three loan contracts discussed, and, therefore, the exemption of N.C.Gen.Stat. § 1C–1601(a)(4) is not available to Debtors-Defendants as to those goods.

## ISSUE

The issue before the Court is whether Creditor has a purchase-money security interest in the goods sold under the loan agreements of December 22, 1976, December 23, 1977, and February 17, 1979, in view of the consolidation of these agreements into one contract.

## CONSIDERATION OF ISSUE

North Carolina has recently enacted provisions in the General Statutes which determine debtors' exemptions in personal property. N.C.Gen.Stat. § 1C–1601(a)(4) gives debtors a minimum exemption of Two Thousand Five Hundred and No/100 Dollars ($2,500.00) in household furniture and appliances. N.C.Gen.Stat. § 1C–1601(e)(7) excepts from the exemption any household goods in which a creditor has a purchase-money security interest. It is not disputed that all of Debtors-Defendants' household furniture and appliances will come under the protection of the exemption unless a purchase-money security interest is found to exist.

N.C.Gen.Stat. § 25A–27(a)(3) is determinative of the present case. It states as follows:

(a) Where a seller in a consumer credit sale makes a subsequent sale to a buyer and takes a security interest pursuant to G.S. 25A–23 in goods previously purchased by the buyer from the seller, the seller shall make application of payments received, for the purpose of determining the amount of the debt secured by the various security interests, as follows:

(3) All subsequent payments shall be applied to the various purchases in the

same proportion or ratio as the original cash prices of the various purchases bear to one another, except that, where the amount of the payments is increased after the subsequent purchase, the seller shall have the option to apply the amount of the increase to the subsequent sale and the balance of the subsequent payments to all sales on a cash price pro rata basis.

N.C.Gen.Stat. § 25A–27(a)(3) clearly places the burden of apportionment of payments upon the seller. If the creditor-seller wishes to avail itself of the benefits of this. statute, the creditor-seller must apportion the debtor-purchaser's payments when they are made and not wait for litigation to ensue. In fact, it would even seem appropriate for the retail installment contract or purchase-money instrument to provide for the apportionment of payments as specified in the statute so that the debtor-purchaser would be fully informed of the fact that the creditor-seller intends to exercise its rights under this statute in the event of default. Otherwise, the merchants might be inclined to assert a security interest in an item of property to the full extent of the total debt even though there was only a lesser sum owed on the balance of the purchase price of that item of property.

N.C.Gen.Stat. § 25A–27(a)(3) was drafted for the protection of both merchant and consumer, not just the merchant.

The December 23, 1977, and February 17, 1979, contracts involved the sale of consumer goods to Debtors and the taking of security interests in goods previously purchased on credit by Debtors from Creditor. Each of these sales involved precisely the situation N.C.Gen.Stat. § 25A–27(a)(3) was designed to govern.

There has been no showing that Creditor complied with the duty statutorily imposed upon it. Neither the December 23, 1977, contract nor the February 17, 1979, contract provided for any apportionment of payments between the items previously purchased and those purchased new on those dates. There has been no showing that Creditor kept its books in such a way as to comply with the apportionment requirement.

The essence of what Creditor sought to do by entering into the February 17, 1979, loan contract with Debtors was to get the benefits of a purchase-money security interest in all of the goods without any of the accompanying burdens imposed by statute. The conclusion that must be drawn is that Creditor sought to have all the goods purchased under the December 22, 1976, December 23, 1977, and February 17, 1979, contracts serve as purchase-money security for the entire amount of February 17, 1979, debt. Creditor, in effect, was attempting to get more security than it was entitled to on its February, 1979, loan.

The Court is aware of the loan contracts' recital that existing contracts between Debtors and Creditors "shall remain in full force and effect" and that Creditor's security interest in goods sold under previous contracts between Debtors and Creditor "shall remain perfected." These recitals, however, do not change what occurred in reality. The time and amount of payments were at all times determined solely by the latest contract between the parties. The contracts of December 23, 1977, and February 17, 1979, changed Debtors' obligations significantly and increased the encumbrance upon Debtors' previously purchased property. These things were done without making the apportionment of payments mandated by N.C.Gen.Stat. § 25A–27(a)(3) for Debtors' protection. A mere recital in Creditor's standard form contract did not preserve the purchase-money security interest in goods purchased before February 17, 1979.

With respect to the item purchased on February 17, 1979, Debtors executed a purchase-money loan agreement which clearly gives Creditor a purchase-money security interest in the item.

## CONCLUSION

Accordingly, this Court concludes that the execution of the February 17, 1979, loan agreement extinguished Creditor's pur-

chase-money security interest in the goods purchased by Debtor prior to that date. Creditor is not entitled to a lifting of the stay as to those goods.

As to the item purchased on February 17, 1979, Creditor's purchase-money security interest remains in effect. The automatic stay may be lifted as to that item; now therefore,

IT IS ORDERED that Plaintiff's claim for relief be denied with respect to the goods purchased under the December 22, 1976, and December 23, 1977, contracts.

IT IS FURTHER ORDERED that the automatic stay be, and the same hereby is, lifted with respect to the item purchased on February 17, 1979.