In the Matter of Leo Joseph VAN-DEUSEN, Robbin Elaine Van-deusen, Debtors.

**Bankruptcy No. 92–00296–8–ATS.**

United States Bankruptcy Court, E.D. North Carolina.

Aug. 20, 1992.

William E. Brewer, Jr., Raleigh, N.C., for debtors.

David D. Lennon, Monroe, Wyne & Lennon, Raleigh, N.C., for Sears Roebuck & Co.

Carol A. Morrison, Fayetteville, N.C., trustee.

JAMES B. WOLFE, Jr., Bankruptcy Judge.[1]

## ORDER AVOIDING LIEN PURSUANT TO SECTION 522(f)(2)

This matter came on for hearing before the court on the 6th day of May, 1992 upon debtor's motion seeking to avoid the lien of Sears, Roebuck and Company ("Sears") pursuant to Section 522(f)(2) of the Bankruptcy Code on the grounds that its lien is a nonpossessory, nonpurchase money security interest in exempt household goods.

### ISSUE

The issue before the court is whether Sears has a valid purchase money security interest in items purchased by debtors on their Sears revolving charge account.

### FACTS

On July 2, 1989 debtors executed a SearsCharge Security Agreement (hereinafter "Security Agreement") with Sears pursuant to which debtors were authorized to make purchases from Sears on a revolving charge account. Pursuant to the terms of the Security Agreement debtors had the option to pay the balance in full without incurring finance charges or to pay in installments. If the debtors elected to make installment payments, Sears imposed a finance charge of 18% per annum on the average daily balance. The Security Agreement provides as follows:

"SECURITY INTEREST IN GOODS. Sears has a security interest under the Uniform Commercial Code in all merchandise charged to the account. If I do not make payments as agreed, the security interest allows Sears to repossess only the merchandise which has not been paid in full. I am responsible for any loss or damage to the merchandise until the price is fully paid. Any payment I make will first be used to pay any unpaid insurance or finance charge(s), and then to pay for the earliest charges on the account. If more than one item is charged on the same date, my payment will apply first to the lowest priced item."

On April 23, 1990 debtors purchased a washer and dryer on the account. The sales price of the dryer was $309.00 and the sales price of the washer was $439.00. With sales tax and miscellaneous charges the total credit to the account was $799.03. On June 1, 1990 debtors purchased on the account a window air conditioner for a total sales price of $565.58. Thereafter, debtor made the payments of $666.00 on the account. Sears applied the payments first to the discharge of finance charges and then to the payment of principal. The finance charges paid were $348.34 and the principal balance paid was $317.66.

### DISCUSSION

Sears conceded at the hearing that through an application of the payments in accordance with the Security Agreement the purchase price of the dryer had been paid, and that it no longer claimed a security interest therein. Sears contends, however, that it retains a valid purchase money security interest in the washer and air conditioner. Debtors maintain on the other hand that Sears does not have a purchase money security interest in the items because it failed to apportion the debtors' payments to the various security interests in compliance with G.S. Section 25A–27. The court agrees with debtors.

Even though the final resolution of the issue raised in this case is controlled by the application of the Retail Installment Sales Act, G.S. 25A–1 *et seq.*, (hereinafter "RISA") the analysis begins with G.S. 24–

---

1. Bankruptcy Judge for the Middle District of North Carolina sitting by designation.

11(c) which provides in pertinent part as follows:

"(c) Any extension of credit under an open-end credit or similar plan under which there is charged a monthly periodic rate greater than one and one quarter per cent (1¼%) may not be secured by real or personal property or any other thing of value, provided that this subsection shall not apply to consumer credit sales regulated by Chapter 25A, the Retail Installment Sales Act...."

There is no question that the Security Agreement in this case is an open end credit or similar plan. Nor is there any dispute that debtors' purchases from Sears are regulated by RISA. But for the *proviso* in G.S. 24–11(c) Sears would not be able to claim a security interest in any items purchased on its Searscharge accounts. RISA provides Sears a means by which it can take a purchase money security interest in items purchased on such accounts.

RISA applies to "consumer credit sales" as defined in G.S. 25A–2. Consumer credit sales are subdivided into two categories under RISA: "revolving charge account contracts" as defined in G.S. 25A–11, and "consumer credit installment sales contracts" as defined in G.S. 25A–12. The SearsCharge Agreement in this case is a revolving charge account contract.

G.S. 25A–23 sets forth the circumstances upon which a creditor can claim a security interest under RISA and provides in pertinent part as follows:

"**Section 25A–23. Collateral taken by the seller.**

(a) The seller in a consumer credit sale may take a security interest only in the following property of the buyer to secure the debt arising from the sale:

(1) The property sold,

(2) Property previously sold by the seller to the buyer and in which the seller has an existing security interest,

. . . . .

(d) The provisions of G.S. 24–11(a),[2] limiting the taking of a security interest in property under an open end credit or similar plan, shall not apply to revolving charge account contracts regulated by this Chapter; provided however, the application of payments rule set out in G.S. 25A–27 shall apply to such contracts ...

Section 25A–27 provides as follows:

**Section 25A–27. Application of Payments.**

(a) Where a seller in a consumer credit sale makes a subsequent sale to a buyer and takes a security interest pursuant to G.S. 25A–23 in goods previously purchased by the buyer from the seller, the seller shall make application of payments received, for the purpose of determining the amount of the debt secured by the various security interests, as follows:

(1) The entire amount of all payments made prior to such subsequent purchase shall be deemed to have been applied to the previous purchases, and

(2) Unless otherwise designated by the buyer, the amount of down payment on such subsequent purchase shall be applied entirely to such subsequent purchase, and

(3) All subsequent payments shall be applied to the various purchases in the same proportion or ratio as the original cash prices of the various purchases bear to one another, except that, where the amount of the payments is increased after the subsequent purchase, the seller shall have the option to apply the amount of the increase to the subsequent sale and the balance of the subsequent payments to all sales on a cash price pro rata basis."

Sears applied the debtors payments on a "first in, first out" basis rather than "in the same proportion or ratio as the original cash prices of the various purchases bear to one another" as mandated by G.S. 25A–27(a)(3).

---

**2.** G.S. 24–11(c), not G.S. 24–11(a), limits the taking of a security interest. The reference to

G.S. 24–11(a) appears to be a technical error.

Two questions remain. Was Sears required to comply with G.S. 25A–27(a) in this case? If so, what is the consequence of its failure to do so?

■ Sears argues that the application of payments rule set out in G.S. 25A–27 does not apply in this case because it applies only when a seller in a consumer credit sale makes a subsequent sale to a buyer and takes a security interest to secure the new debt pursuant to G.S. 25A–23 in goods previously purchased by the buyer from the seller. Sears argues that in the subsequent sale it took a security interest only in the item purchased, i.e., the air conditioner, and that the debt arising out of that sale is not secured by the washer and dryer. In essence, Sears argues that under the Security Agreement each purchase is an isolated purchase money transaction unrelated to other purchases made on the account.

Sears argument fails for two reasons. First, it ignores the fact that G.S. 25A–23(d) explicitly provides that the application of payments rule shall apply to revolving charge accounts. Secondly, it is based on a myopic view of its Security Agreement.

■ When debtors purchased the air conditioner they had not yet paid the balance due on the washer and dryer. Pursuant to the terms of the Security Agreement Sears had taken a security interest in the washer and dryer and still maintained the security interest in each item because the purchase price of neither item had been fully paid. The debt that arose from purchase of the air conditioner included finance charges that accrued on its purchase price. Thereafter, debtors payments were applied first to the payment of finance charges before any payments were applied to the purchase prices of the washer and dryer. Consequently, the security interests Sears had in the washer and dryer secured not only the debt arising from their own purchase but also that portion of the debt arising from the purchase of the air conditioner represented by the finance charges. Therefore, Sears did take a security interest in goods previously purchased by debtors, the washer and dryer, to secure debt arising from the subsequent sale of the air conditioner, and the circumstances invoking application of G.S. 25A–27 have been met.

This ruling is in accord with the ruling of Judge A. Thomas Small of this court in an unpublished order in the case of *In Re Edge* (91–05055–5–ATS, March 27, 1992) in which he held that G.S. 25A–27 applies to a SearsCharge Security Agreement.

As to the final question posed, by its failure to comply with G.S. 25A–27 Sears loses its security interest in the merchandise. RISA provides creditors a safe harbor in which they can claim valid security interests in merchandise purchased on a revolving charge account or in a series of installment contracts. Sears ran aground in the inlet when it failed to apply debtors' payments in accordance with G.S. 25A–27. *Dossenbach's of Clinton vs. Bartelt*, 23 B.R. 404 (Bankr.E.D.N.C.1982); *In Re Edge, supra.* Debtors do not argue, and this ruling does not imply, that in the absence of RISA Sears' method of applying payments on a "first in, first out" basis would not be a reasonable manner in which to apply payments. However, the North Carolina General Assembly has made the determination that only one method of application of payments is permissible for consumer credit sales regulated by RISA. Any creditor who makes consumer credit sales in this State and fails to comply with this legislative mandate not only loses its security interests in connection with such sales, but also subjects itself to a claim of unfair and deceptive trade practices under G.S. 75–1.1 when it knowingly and willfully violates RISA. G.S. 25A–44(4).

Based on the foregoing, the debtors' motion to avoid the Sears lien on the washer, dryer, and air conditioner is ALLOWED.

SO ORDERED.