**SEARS, ROEBUCK AND COMPANY, INC.**

v.

**Leo Joseph VANDEUSEN, II, and Robbin Elaine Vandeusen.**

**No. 92–830–CIV–5–BO.**

United States District Court, E.D. North Carolina, Raleigh Division.

June 7, 1993.

David D. Lennon, Monroe, Wyne & Lennon, P.A., Raleigh, NC, for plaintiffs.

William E. Brewer, Jr., Raleigh, NC, for defendant.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the court on appeal from an order of the United States Bankruptcy Court for the Eastern District of North Carolina avoiding a lien pursuant to Section 522(f)(2) of the Bankruptcy Code, 147 B.R. 9. (1992). Because the court finds that the bankruptcy court correctly applied the applicable North Carolina statutes in finding that the lien may be avoided, the order below will be affirmed.

### FACTS

In 1989, debtors Leo and Robbin Vandeusen set up a revolving charge account with Sears. Under the terms of the Sears-Charge agreement Sears takes a security interest in all merchandise charged to the customer's account, and the agreement gives notice that Sears may repossess merchandise which has not been paid for in full. The agreement further sets out that payments will be applied first to unpaid insurance or finance charges, then to pay for the earliest charges on the account.

On April 23, 1990, the Vandeusens charged a $439.00 washer and a $309.00 dryer on their account, making their unpaid balance (including sales tax and miscellaneous charges) $799.03. On June 1, 1990, the Vandeusens charged a $565.58 window air conditioner to the account. In the subsequent months, debtors made payments of $666.00 on the account, and Sears applied the payments first to the finance charges and then to the principal.

After debtors filed for bankruptcy, Sears sought to exercise its rights under the security agreement with respect to the washer and the air conditioner. (Sears concedes that the payments made before bankruptcy sufficiently reduced the principal to release the dryer from Sears' security interest.) Debtors then filed a motion to avoid the Security interest on the ground that Sears' application of the payments did not comply with state law. The Bankruptcy Judge granted the debtors' motion and Sears filed this appeal.

### THE APPLICABLE LAW

Under North Carolina law, secured transactions are generally governed by Article 9 of the Uniform Commercial Code (UCC), codified at N.C.Gen.Stat. § 25–9–101 *et seq.* Article 9 provides that in order to create a security interest there must be a security agreement signed by the debtor, the debtor must have rights in the collateral, and the creditor must give value. N.C.Gen.Stat. § 25–9–302.

The requirements of Article 9 are subject to modification, however, by other North Carolina statutes. *See* N.C.Gen.Stat. § 25–9–203. One such statute is N.C.Gen.Stat. § 24–11(c), which imposes an additional limitation on Article 9 security interests. That section prohibits creditors from taking a security interest in real or personal property to secure a debt on which the monthly

periodic interest rate is greater than one and a quarter percent. N.C.Gen.Stat. 24–11(c).

Under the provisions of N.C.Gen.Stat. § 25A–23(d), however, the rule set out in Section 24–11(c) "shall not apply to revolving charge account contracts; provided, however the application of payments rule set out in G.S. 25A–27 shall apply to such contracts." N.C.Gen.Stat. § 25A–27(a) requires that:

Where a seller in a consumer credit sale makes a subsequent sale to a buyer and takes a security interest ... in goods previously purchased by the buyer from the seller, the seller shall make application of payments received ... as follows:

(1) The entire amount of all payments made prior to such subsequent purchase shall be deemed to have been applied to the previous purchases, and

(2) Unless otherwise designated by the buyer, the amount of down payment on such subsequent purchase, and

(3) *All subsequent payments shall be applied to the various purchases in the same proportion or ratio as the original cash prices of the various purchases bear to one another, except that, when the amount of payments is increased after the subsequent purchase the seller shall have the option to apply the amount of the increase to the subsequent sale and the balance of the subsequent payments to all sales on a cash price pro rata basis.*

(emphasis added).

Sections 24–11(c), 25A–23(d) and 25A–27, when taken together, impose another requirement for taking an Article 9 security interest when the collateral is goods previously purchased. In that case, the contract must provide for pro-rata application of payments by the seller. The result of failing to include such a provision is apparent from a close reading of Section 24–11(c) and 25A–23(d). Section 24–11(c) is a general prohibition against taking security interests under open-end credit plans. Section 25A–23(d) explains that this prohibition "shall not apply to revolving charge ac-

count contracts regulated by [RISA], *provided, however, the application of payments rule* set out in G.S. 25A–27 *shall apply* to such contracts." (emphasis added). It follows from this language if the application of payments rule is not followed, then the prohibition remains in force. As a result, where property previously sold by the seller to the buyer is to be taken as collateral, the seller must provide for a pro-rata application of payments in the contract in order to create a valid Article 9 security interest in the previously sold goods.

Understanding this to be the law governing the instant appeal, the court now turns to the contentions of the parties.

### DISCUSSION

It is undisputed that Sears did not apply the payments pro rata to all the goods charged to the account as required by N.C.Gen.Stat. § 25A–27; the terms of their agreement require application of payments to finance charges first and then to the first goods purchased. For this reason, the debtors argued and the bankruptcy judge found that based on the provisions of RISA their security interest was invalid. Sears contends on appeal that (1) their SearsCharge agreement does not constitute a security interest on previously purchased property so that Section 25A–27 applies, and (2) even if the section does apply, striking Sears' security interest is not the proper remedy. The court will consider each of these arguments in turn.

*1. The Applicability of N.C.Gen.Stat. § 25A–27.*

Under the provisions of the SearsCharge agreement, Sears applies payments to reduce the outstanding balance on a customer's revolving credit account in the following manner:

Any payment I [the buyer] make will first be used to pay any unpaid insurance or finance charge(s), and then to pay for the earliest charges on the account. If more than one item is charged on the same date, my payment will apply first to the lower priced item.

By requiring that finance charges for newly purchased goods be satisfied before payments will be applied to previously purchased items, this provision expands the existing security interest in prior purchases to secure not only their own purchase price but also the payment of finances charges on items bought later.[1] Based on this reasoning, the bankruptcy court held that the SearsCharge agreement creates a security interest in previously purchased property, and thereby requires compliance with the apportionment provisions in Section 25A–27. This court can find no fault with the conclusion of the bankruptcy court, and since Sears admits that it did not apply the payments pro-rata as required by the Section 25A–27, it is clear that Sears has not complied with the statute.[2]

## 2. The Consequences of Failure to Comply.

█ In addition to arguing that it has not violated the statute, Sears also contends that even if it did not comply, avoidance of its lien is not the proper remedy. In support of this contention, Sears points out that the legislature has specified the remedies for a violation of the provisions of RISA in N.C.Gen.Stat. § 25A–44, and that avoidance of the security interest is a permissible remedy only in certain limited circumstances.

█ This argument confuses the remedies for violation of the protective provisions of the statute with the consequences of failure to complete the steps for creating a security interest. As set out above, in order to create a security interest in previ-

ously purchased property, the seller must provide for apportioning payments in the charge account contract. *See Dossenbach's of Clinton, Inc. v. Bartlet,* 23 B.R. 404, 405 (E.D.N.C.1982). The failure to do so means that no security interest comes into existence. Had a valid security interest been created under RISA and the other applicable statutes, the court agrees that the proper remedy would be found in either 25A–44 or, if the agreement were unconscionable, in 25A–43. In this case, however, the bankruptcy judge was not striking an otherwise valid security interest; he was recognizing that no such interest was ever created. The court finds no error in this conclusion.

## CONCLUSION

For the reasons, set out above, the court holds that the bankruptcy court's order avoiding the lien of Sears, Roebuck and Company was properly entered. The decision of the bankruptcy court is AFFIRMED.

SO ORDERED.

---

1. The Bankruptcy Court for the Western District of North Carolina held that the apportionment requirement did not apply to the SearsCharge agreement in *In re Price,* No. 92–30052 (W.D.N.C.1993), but this court cannot agree with the reasoning of that decision. Although the *Price* court acknowledged that "the payment of accrued finance charges may delay the eventual payoff of previously purchased items," it felt that this result is not "the equivalent of taking a security interest in previously purchased items." This court is hard pressed to see the distinction. Until the buyer pays off the accrued finance charges on a later purchased item, the amount secured by the prior purchase is not reduced. During this "delay" the security

interest remains in force on the prior purchase, and any default will allow foreclosure on the security interest. The effect of this system is that each previously purchased item serves as collateral for all finance charges on later purchases, and this court cannot see how such a system can fall outside the boundaries of Section 25A–23(a)(2).

2. This holding is in accord with the unpublished order issued by the bankruptcy court for this district in *In re Edge,* 91–05055–8–ATS (1993), finding that the SearsCharge does not comply with Section 25A–27.